[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 7, 2004
THOMAS K. KAHN
CLERK

No. 02-15369

D. C. Docket No. 00-00008-CR-1-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CRAIG PAULINUS CLAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 7, 2003)**

Before ANDERSON, BARKETT and RONEY Circuit Judges.

PER CURIAM:

Craig Paulinus Clay appeals his convictions and sentences for (1) possession

with intent to distribute cocaine hydrochloride, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)

and 851, (2) possession with intent to distribute at least fifty grams of cocaine base ("crack"), 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and 851, and (3) possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Clay makes three arguments on appeal: (1) the district court improperly denied his motion to suppress evidence, alleging the search warrants were not based on probable cause, were illegally executed, and he was denied a hearing on the suppression issues; (2) he should not have been convicted of or sentenced for possession of an aggregate of at least 50 grams of cocaine base because less than 50 grams of cocaine seized by officers on the same day were located in two different locations; and (3) the government failed to prove the interstate commerce element of the firearm count. We affirm.

**(1)    Denial of the motion to suppress**

In July 1997 a Georgia state inter-agency police narcotics squad was engaged in an investigation of allegations that Clay was distributing crack cocaine from Phase II, a business operated by Clay in Toccoa, Georgia. For three or four weekends, Detective Rusty Fulbright had conducted surveillance of Phase II, observing on several occasions a person walking from the Phase II building into the parking lot and making brief hand-to-hand exchanges with individuals. Based on activities observed by Detective Fulbright, as well as information from three confidential informants who had indicated that Clay had been selling crack cocaine at Phase II, an affidavit for a

search warrant of Phase II was drafted, submitted to and approved by a state judge, and executed by the narcotics squad on the evening of July 31, 1997. Approximately one hour before the execution of that warrant, Detective Fulbright observed Clay in the parking lot and observed a man later identified as Larry Darnell Dukes make another hand-to-hand transaction at Clay's instructions. During the execution of that search warrant, officers witnessed Clay attempting to swallow what appeared to be crack cocaine. A search of Phase II revealed, *inter alia*, 19.2 grams of cocaine base.

Later that day, a second affidavit for search warrant was prepared by the investigating officers and again approved by a Georgia state judge. The second search warrant authorized the search of a motel room that had been registered in Clay's name for the two preceding months. The officers ultimately seized a total of 33.3 grams of cocaine base from that motel room, along with a .38 caliber Colt firearm.

Clay was first prosecuted in Georgia state court. A state judge held an evidentiary hearing on a motion to suppress evidence seized at both Phase II and Clay's motel room. Several officers, including Detective Fulbright, testified at that state evidentiary hearing as to the information contained in the applications for search warrants. The state court ultimately denied Clay's motion to suppress. Shortly thereafter, the prosecution of the case was transferred to the United States Attorney's

Office for the Northern District of Georgia, and a three-count federal indictment was subsequently issued.

Clay filed a motion to suppress in federal district court, requesting a hearing. The magistrate judge reviewed the transcript of Clay's state court suppression hearing and recommended that the district court deny Clay's motion to suppress without a hearing on the motion, which the district court adopted. Clay argues that the district court erred by denying his motion to suppress evidence seized pursuant to the two July 31, 1997 Georgia state search warrants because those warrants lacked probable cause. Intertwined with Clay's contention that the search warrants lacked probable cause is that those warrants were also executed illegally, and that the district court erred by not conducting its own suppression hearing. Specifically, he asserts that because the warrants were drafted and executed by Georgia state, approved by a state judge, and Georgia does not recognize a *United States v. Leon*, 468 U.S. 897 (1987), good faith exception to the execution of a search warrant, the district court erred by holding that good faith exception as an *alternative ground* for upholding the validity of the search warrant without first conducting a hearing.

There is no reversible error. It is established law of this Circuit that the admissibility in federal court of the products of state searches and seizures is controlled by federal law. *See United States v. De La Rosa*, 922 F.2d 675, 678-79

4

(11th Cir. 1999) ("In determining whether there has been an unreasonable search and seizure by state officers a federal court must make an independent inquiry . . .. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.") (internal quotation and citation omitted); *United States v. Mastrangelo*, 733 F.2d 793, 799 (11th Cir. 1984); *Burge v. Estelle*, 496 F.2d 1177, 1178 (5th Cir. 1974). Therefore, whether Georgia law permits or does not permit a good faith exception to the warrant requirement is irrelevant in a federal court's independent evaluation of the admissibility and the reasonableness of a search and seizure by state officers utilized in a federal criminal prosecution.

A careful review of the Georgia state affidavits for search warrants reveals that under the totality of the circumstances the issuing state magistrate judge was provided specific information that cocaine was being stored at Clay's motel room and being sold from Phase II. The state court's findings of facts that were before the magistrate court in this case were not clearly erroneous, and the warrants were thus supported by probable cause. *See United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) (noting "reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations" based on, *inter alia*, a review of search warrant affidavits). We need not consider Clay's argument that it was error for the district

5

court to not conduct an evidentiary hearing to address the good faith exception because, after careful review, we hold that the affidavits had probable cause and the good faith exception thus need not apply.

### (2) Conviction and sentence for possession of an aggregate of at least 50 grams of cocaine base

Although cocaine base was found at two different locations (19.2 grams at Phase II and 33.3 grams in the motel room) on the same day, Count Two of the indictment charged one single count of possession with intent to distribute at least fifty grams of cocaine base. Specifically, the indictment charged, "On or about July 31, 1997, in the Northern District of Georgia, the defendant . . . knowingly and intentionally possessed at least fifty grams of a mixture and substance containing a detectable amount of cocaine base ("crack") . . . in violation of [21 U.S.C. § 841(a)(1), 841(b)(1)(A)(iii) and 851, 18 U.S.C. § 2]."

Clay argues that the cocaine found in two different locations amounted to separate possessions and separate violations for which he could not be convicted in one count. He argues that aggregation of those two quantities charged in that single count for the purpose of achieving the requisite 50 grams of cocaine base to require a mandatory 240-month sentence under § 841(b)(1)(A)(iii) was error.

6

Although Clay's failure to make a motion for a judgment of acquittal at the close of all evidence might call for a plain error standard of review, we hold that there would be no error, even had an objection been made in the trial court. The key issue in this case is whether Clay's possession of two separate caches of cocaine base on the same date but at different locations constitutes a single § 841(a) offense and thus may be aggregated. First, as a threshold matter, this Court has held that "constructive" possession is sufficient to prove the possession prong under § 841(a). *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989). We have defined constructive possession in drug cases as "by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." *Poole*, 878 F.2d at 1392; *see also United States v. Harris*, 20 F.3d 445, 453-54 (11th Cir. 1994) (holding that defendant's unrestricted access to house permitted jury to reasonably infer that he exercised control over house and therefore maintained constructive possession over cocaine found in the house); *United States v. Morales*, 868 F.2d 1562, 1573 (11th Cir. 1989) (person who leased apartment had constructive possession of drugs found there). Moreover, courts have routinely held that possession of two separate caches of the same drug on the same day constitutes but one single § 841(a)(1) offense. *See, e.g., United States v. Stephens*, 118 F.3d 479, 482 (6th Cir. 1997); *United States v. Dixon*, 921 F.2d 194, 196 (8th Cir. 1990).

7

Here, the evidence adduced at trial revealed that on July 31, 1997, police officers first searched Phase II, a business owned and operated by Clay, and found 19.2 grams of cocaine base. On that *same* day, the officers then traveled "a few blocks" – approximately "a minute or two drive" – from Phase II to a motel room, where Clay had been registered as a guest for the previous two consecutive months. A search of that motel room revealed, *inter alia*, 33.3 grams of cocaine base. Those two caches of crack cocaine totaling 52.5 grams were separated by only "a few blocks" and were a single, simultaneous possession, at least constructively, by Clay on July 31, 1997. To require the government to charge these two possessions on the same day in two different counts would subject the government to a "duplicitous" argument by defendants in these cases. *See, e.g.*, *United States v. Woods*, 568 F.2d 509, 512-514 (6th Cir. 1978) (district court erred by failing to merge three heroin possessions on the same day into one count).

**(3)**     <u>**Whether the district court erred by utilizing a special verdict form specifying drug quantity**</u>

Additionally, Clay argues for the first time on appeal that it was error for the district court to utilize a special verdict form to confirm that the quantity of cocaine base alleged in Count II was at least 50 grams, mandating a 240-month minimum sentence.

A verdict form was prepared as follows in relevant part:

> (A) As to Count Two, we, the jury find the Defendant _____ of possession of cocaine base with intent to distribute.
> (B) If guilty, did the offense involve at least 50 grams of cocaine base?
> (C) If guilty, and the answer to 2(B) is "No," did the offense involve less than 50 grams?

The jury found Clay guilty on all counts and indicated on the special verdict form that the cocaine base involved at least 50 grams. Clay's Pre-sentence investigation report set an incarceration range as 188-235 months but also noted that he faced a mandatory minimum of 240 months' imprisonment on the possession with intent to distribute cocaine base count. The district court sentenced Clay to 240 months' imprisonment for the cocaine base count and ordered the remaining drug and firearm convictions to run concurrently with that 240-month sentence.

We hold that there was no reversible error by submitting the special verdict form to the jury to determine whether at least 50 grams of cocaine were involved in the offense. This Court has held that special verdicts are appropriate in addressing sentencing matters. *See United States v. Dennis*, 786 F.2d 1029, 1041 (11th Cir. 1986). Here, under § 841(b)(1)(A)(iii), 50 or more grams of cocaine base must have been found by the jury in order to expose Clay, because of his prior felony drug conviction, to a mandatory minimum sentence of 20 years' imprisonment. *See*

9

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The district court thus did not plainly err by utilizing a special verdict form. *See United States v. Smith*, 308 F.3d 726, 742 (7th Cir. 2002) (district court did not err by special verdict form permitting a finding of a range of drug quantities); *United States v. Trennell*, 290 F.3d 881, 890 (7th Cir. 2002) (no plain error by including specific quantities of drugs in the jury instructions and verdict form).

**(4)     Whether the government failed to prove the interstate commerce element of the firearm count**

Next, for the first time on appeal, Clay argues that the government failed to establish a *prima facie* case for his 18 U.S.C. § 922(g)(1) felon in possession of a firearm conviction, contending that a jurisdictional defect in his conviction exists. Specifically, he asserts that although the government offered and the district court admitted the seized .38 caliber Colt revolver with "Colt Manufacturing Company, Hartford, Ct." displayed on the revolver's barrel, the government nonetheless failed to present evidence that the firearm indeed traveled in interstate commerce as required by § 922(g)(1).

Although Clay's argument was not made at trial, it can be raised here because it is jurisdictional. The standard of review for jurisdictional issue is not plain error but the same as sufficiency of the evidence standard of review. We therefore review the evidence to determine whether "a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government could find the defendants guilty as charged beyond a reasonable doubt." *United States v. Williamson*, 339 F.3d 1295, 1299 (11th Cir. 2003) (internal quotation and citation omitted). That is, a jury's verdict will be affirmed if the court determines that it "was *rationally able* to find that every element of the charged crimes was established by the government beyond a reasonable doubt.'" *Id.* (quoting *United States v. McCarrick*, 294 F.3d 1286, 1289-90 (11th Cir. 2002) (emphasis supplied)).

Section 922(g)(1) states that it is unlawful for any convicted felon to "possess in *or affecting* commerce, any firearm." 18 U.S.C. § 922(g)(1) (emphasis supplied). This Court has held that the "possess in or affecting commerce" portion of § 922(g)(1) is a jurisdictional element of that criminal offense. *See United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996); *see also United States v. Scott*, 263 F.3d 1270, 1272 (11th Cir. 2001). Interpreting *McAllister*, this Court in *Scott* held that "[t]o effectuate a constitutional conviction under § 922(g)(1), *McAllister* requires the government to demonstrate that the firearm possessed traveled in interstate

11

commerce." *Id.* at 1274; *see also United States v. Reynolds*, 215 F.3d 1210, 1215 (11th Cir. 2000) ("The government must prove, however, that the firearm possessed traveled in interstate commerce.").

The dispositive question here is whether, based on the evidence presented to the jury, it was *rationally able* to conclude that the weapon seized in Clay's motel room was possessed in or affected interstate commerce. *Williamson*, 339 F.3d at 1299. The evidence adduced at trial reveals that a .38 caliber Colt revolver firearm was introduced into evidence without objection. Inscribed on its barrel was "Colt Manufacturing Company, Hartford, Ct." Other than this inscription on the firearm, there was no other evidence presented at trial that the gun was possessed in or affected interstate commerce. Although no witness read the inscription on the barrel of the revolver to the jury during the evidence stage of trial, the government did, during closing arguments, call the jury's attention to the inscription on the revolver, indicating that the barrel read "Colt Manufacturing Company, Hartford, Ct." Clay neither disputes that the government indeed stated this during closing argument nor does he argue that his attorney argued to the contrary during his closing argument.

Clay first argues on appeal that the statement on the firearm is hearsay, and thus can not be relied upon to prove the fact the it traveled through interstate commerce. This evidentiary argument, without objection in the trial court, is

reviewed on appeal for plain error. *See United States v. King*, 73 F.3d 1564, 1571 (11th Cir. 1996) ("When, as here, the proper basis for admission is not presented to the district court, we can review the court's evidentiary ruling only for plain error."). It was not plain error to admit the firearm with the imprint on the handle. *See United States v. Thody*, 978 F.2d 625, 630-31 (10th Cir. 1992) (no plain error for hearsay argument raised first time on appeal by admitting a firearm with manufacturer's "Made in Spain" inscription to prove gun's place of origin for purpose of demonstrating that weapon traveled in interstate commerce).

We have stated that a weapon which was seized in Florida and "bore an imprint indicating that it had been manufactured in Atlanta" gave a "clear indication of interstate commerce." *United States v. Brantley*, 68 F.3d 1283, 1288 (11th Cir. 1995); *see also United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir. 1987) (holding that firearm – with manufactured in Miami, Florida inscribed on it – seized in Los Angeles "could not have made the journey from Miami to Los Angeles without traveling in interstate commerce"); *United States v. Gourley*, 835 F.2d 249, 251 (10th Cir. 1987) (proof that firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was "in or affected commerce").

In *United States v. Coleman*, 22 F.3d 126 (7th Cir. 1994), our sister circuit considered a similar issue raised here and upheld the conviction. In *Coleman*, the defendant argued that although a firearm seized in Wisconsin was inscribed, "Stevens Savage Arms Corporation Chicopee Falls, Mass U.S.A.," and an ATF expert testified that "guns are labeled with manufacturer proof marks which identify a weapon's place of manufacture," there was nonetheless insufficient evidence to prove that the weapon "moved in interstate commerce." 22 F.3d at 131. In analyzing whether there was sufficient evidence for the jury to determine beyond a reasonable doubt that the weapon moved in interstate commerce, the Court explained:

> In closing argument, the government explicitly invited the jury to look at the markings on the guns for proof of interstate commerce nexus, while Coleman, despite the testimony of the ATF expert, urged the jury to consider that the markings may only represent the home office of the manufacturing corporation and not the actual place of manufacture. The jury was entitled to inspect the weapon for themselves and draw the conclusion, based on the ATF agent's testimony that the markings were dispositive of out-of-state production. The record is certainly not barren of any evidence, regardless of weight, from which the trier of fact could find [this element] beyond a reasonable doubt.

22 F.3d at 131 (internal quotation and citation omitted).

Here, like *Coleman*, the government offered a firearm into evidence that had a marking indicating a name of a manufacturing company, as well as a location of that

company. Moreover, the government here, as well as in *Coleman*, identified these markings to the jury during closing arguments. Although no witness testified as to the significance of the markings, no argument was made to the jury that the inscription on the weapon meant anything but that it was, at one point or another, located in Hartford, Ct.

Where there was neither an objection made nor a contrary argument made to the jury, we hold that under the facts and circumstances of this case, a jury could, by reviewing the inscription "Colt Manufacturing Company, Hartford, Ct.," coupled with the evidence that the firearm was seized in Georgia, have "rationally inferred" beyond a reasonable doubt that the firearm traveled in or at least affected interstate commerce.

In order to avoid appeals on such a matter which the government suggested at oral argument was a "non-issue," because the government bears the burden of proof, prosecutors would be well advised to offer direct evidence rather than proof by inference upon which a jury could rely.

AFFIRMED.

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority opinion's affirmance of the district court's denial of Clay's motion to suppress as well as his conviction for possession of at least 50 grams of cocaine and sentence under 21 U.S.C. § 841(b)(2)(A)(iii). I do not agree, however, that we should affirm Clay's conviction for possession of a firearm in violation of 18 U.S.C. § 922(g)(1), because the government failed to meet its burden of producing evidence that would establish or even provide a reasonable inference, beyond a reasonable doubt, that the firearm in this case was in or affected interstate commerce. The sole piece of evidence introduced, the imprint on the revolver's barrel, merely gives the name and address of the manufacturer without any indication of where the gun was actually made. I am aware of no case where this evidence, standing on its own, has been considered sufficient for establishing the interstate nexus. In each of the cases cited to by the majority wherein markings on the gun are sufficient, the imprints explicitly indicate that the gun was made or manufactured in another state or country. In the one case cited to by the majority where the gun's imprint only indicated the manufacturer's name and address, that evidence was found to be sufficient where it was corroborated by the  testimony of an ATF expert, something that the government did not provide here. See United States v. Coleman, 22 F.3d 126 (7th Cir. 1994). Moreover, in this case, no evidence was introduced disproving the

16

possibility that the gun was manufactured at a plant in Georgia and never left the state. Accordingly, I believe that Clay's firearm conviction must be reversed.