[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-14104
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00003-CR-MMP


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEROY HAMPTON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 19, 2005)


Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-Appellant Leroy Hampton was indicted for knowingly possessing a firearm in and affecting interstate commerce after having been convicted of a crime punishable for a term of imprisonment exceeding one year. See 18 U.S.C. §§ 922(g) and 924(e). Hampton stipulated that he had been convicted of a qualifying crime. Before trial, he filed notice of his intent to introduce evidence of insanity as part of his defense. After a hearing, the court found him competent to stand trial. He was convicted, and now appeals that conviction.

Evidence at trial showed that on the morning of October 13, 2002, Hampton entered the Tabernacle of Praise Restoration Outreach Center and Church of God in Christ, in Gainesville, Florida. He told the assistant pastor that he wanted to attend church that morning; he then said that someone had been chasing him the night before but that he was no longer afraid because he had "this." As he said the word "this," he lifted his shirt to reveal a small silver gun tucked into the waistband of his pants. At the assistant pastor's urging, Hampton put the gun away. Upon being informed, the pastor told the defendant he would not be allowed to remain at the church and gave instructions to call the police.

When the police arrived, they handcuffed Hampton, who no longer had the gun on his person. A parishoner had seen Hampton enter an office near the church's

2

waiting room, remain there for "at least a minute or two," and then leave. The arresting officers found the gun in a trash can in the office Hampton had entered.

Special Agent Don Williams of the Bureau of Alcohol, Tobacco and Firearms ("ATF") testified, without objection, as an expert in the field of firearms identification and point of origin. Agent Williams testified that the gun Hampton possessed on the morning of October 13, 2002 had traveled in interstate commerce from California to Florida. On cross-examination, Williams admitted that he had originally misidentified the gun, but noted that this misidentification was the result of a clerical error; he was working off a written description and never saw the gun in person until much later. Williams admitted that he had not checked the serial number on the gun; however, the gun bore the markings and design of Loricin Engineering, Inc., which had been located in California until it went out of business. Williams explained that to manufacture a copy of the gun locally would have been prohibitively expensive and time- and effort-intensive. Hampton subsequently moved for a judgment of acquittal, partially based on the government's failure to carry its burden of proof on the interstate commerce element of the crime. The district court denied the motion.

In presenting its case, the defense called Dr. Harry Krop as a psychiatric expert. Dr. Krop had examined Hampton on three prior occasions, and spent six and one-half

hours with him for purposes of the present case. Dr. Krop testified that each of Hampton's three prior hospitalizations resulted from the fact that Hampton suffered from schizophrenia, paranoid type, the major symptoms of which are delusions and hallucinations. Although he is a paranoid schizophrenic, Hampton has never been declared insane. While Hampton was imprisoned, his symptoms were controlled with medication, but he apparently stopped taking his medication after his release.

On cross-examination, Dr. Krop testified that schizophrenia, paranoid type, does not in and of itself indicate that "a person" would be unable to understand the nature, quality, or wrongfulness of his acts. The defense objected on the basis that this question went to the ultimate issue of Hampton's mental state, but the district court overruled the objection. Dr. Krop also testified that a person could be found incompetent to stand trial yet be considered legally sane. Over the defense's objections, Dr. Krop also testified that Hampton's actions were goal-directed and that he understood what he was doing when he put the gun in his possession. In its rebuttal, the prosecution called Dr. Miguel Gutierrez, its own psychiatric expert, who similarly testified that a finding that a person suffers from schizophrenia, paranoid type, does not in and of itself indicate that the person is unable to understand the nature, quality, or wrongfulness of his acts.

4

At the charging conference, the defense suggested that in defining the term "clear and convincing evidence" in connection with the insanity defense, the court employ the term "firm conviction." The court, however, used the term "highly probable" instead.

Hampton brings this appeal on three grounds. The first is the denial of the motion for judgment of acquittal, based on the alleged lack of sufficient evidence to demonstrate the jurisdictional element of the crime. This court reviews such a motion de novo, viewing the evidence "in the light most favorable to the government in determining whether a reasonable jury could have concluded beyond a reasonable doubt" that the defendant was guilty. Butcher v. United States, 368 F.3d 1290, 1297 (11th Cir. 2004).

To establish the jurisdictional element of the crime under 18 U.S.C. § 922(g), the government must prove that the firearm moved in interstate commerce at any time. United States v. Wilson, 159 F.3d 280, 286-87 (11th Cir. 1998). Generally, expert testimony that the gun traveled in interstate commerce is sufficient. United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001). Although direct evidence of interstate travel is preferable, evidence that enables the jury to infer interstate travel may be sufficient. United States v. Clay, 335 F.3d 1281, 1287 (11th Cir. 2004). Hampton argues that Special Agent Williams, the expert who identified the gun,

5

failed to use the proper methodology to determine whether it had traveled in interstate commerce and failed to account for the theory that the gun could have been a knock-off manufactured in Florida.

Viewing the evidence in the light most favorable to the government, we hold that it was sufficient to survive the motion for judgment of acquittal. We have held previously that "[t]he evidence may be sufficient though it does not exclude every reasonable hypothesis of innocence or [is not] wholly inconsistent with every conclusion except that of guilt. . . . A jury is free to choose among reasonable constructions of the evidence." United States v. Montes-Cardenas, 746 F.2d 771, 778 (11th Cir. 1984) (internal quotation marks and citation omitted). Here, the expert witness' testimony as to the expense, time, and effort involved in creating a knock-off of the gun were sufficient to allow the jury to infer that it traveled in interstate commerce. Contrary to Hampton's assertion, Special Agent Williams was not required to use the serial number to trace the gun, although such proof may be the best evidence of movement in interstate commerce. Indeed, we found in Clay that the evidence was sufficient to meet the jurisdictional requirement of § 922(g) because the firearm had the inscription "Colt Manufacturing Company, Hartford, CT," and the firearm was seized in Georgia. Clay, 335 F.3d at 1287.

Hampton's second ground for appeal is that the district court erred in admitting expert testimony on the ultimate issue of his sanity, in violation of Federal Rule of Evidence 704. We review the district court's decision to admit or exclude expert testimony for abuse of discretion, deferring to the district court's ruling unless the ruling is "manifestly erroneous." Quiet Tech, DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997)). Hampton argues that his expert, Dr. Krop, and the government's expert, Dr. Gutierrez, improperly testified on the ultimate issue of Hampton's sanity, because each question was prefaced with a statement about Hampton's symptoms or behavior, even though the questions themselves were in the form of hypotheticals.

Under Rule 704(b), "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto." Expert testimony concerning the nature of a defendant's mental disease or defect, however, is admissible, including evidence of the disease or defect's typical effect on a person's mental state. United States v. Davis, 835 F.3d 274, 276 (11th Cir. 1998). Although a "thinly veiled hypothetical" may not be used to circumvent Rule 704(b), the rule

allows the witness to explain the disease and its typical effect on a person's mental state. United States v. Manley, 893 F.2d 1221, 1223 (11th Cir. 1990).

In the present case, the expert witnesses' testimony served the same purpose we condoned in Manley—it explained the disease and its typical effect on a person's mental state. Contrary to Hampton's assertions, the questions to Drs. Krop and Gutierrez were not "thinly veiled hypotheticals," but were designed to elicit information about whether a paranoid schizophrenic could undertstand the nature, quality, or wrongfulness of his acts, and about whether a person could previously have been deemed incompetent to stand trial and yet be legally sane. As such, the district court judge properly overruled Hampton's objections to the introduction of such evidence.

Hampton's third ground for appeal is that the district court erred in charging the jury on the definition of "clear and convincing" evidence, which was critical to his insanity defense. Hampton claims that the court erred in two ways: (1) by using the phrase "highly probable" instead of "firm conviction" in its jury charge, and (2) by allowing the Government to use the form "high probability" in its closing argument, thereby introducing a "mathematical concept" inappropriate for jury deliberations. We review the district court's jury instructions for abuse of discretion, and do not reverse unless there is a reasonable likelihood that any error affected the

defendant's substantial rights.  <u>United States v. Wright</u>, 392 F.3d 1269, 1277 (11th Cir. 2004).

Under federal law, a defendant must prove the defense of insanity by clear and convincing evidence.  18 U.S.C. § 17.  We have adopted the term "highly probable" as part of the definition of "clear and convincing" in the context of the insanity defense.  <u>United States v. Owens</u>, 854 F.2d 432, 435-36 n.8 (11th Cir. 1988).  The district court employed the term "highly probable" based on our case law, and therefore did not commit reversible error in using it.

Hampton's argument that the phrase "high probability" was confusing to jurors because it introduced a mathematical concept is similarly without merit.  As the Government points out, "highly probable" is merely the adjectival form of the noun phrase "high probability."  Both describe the same concept—a concept which may have a mathematical meaning, but which also has a specific legal meaning in describing the burden of proof for the insanity defense under our circuit's law.  The district court did not err in allowing the Government to use the phrase "high probability" in its closing argument.

For the foregoing reasons, the conviction is **AFFIRMED.**