[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15682
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-00024-RWS-JCF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESSE JAMES PATTERSON, JR.,
a.k.a. Jesse Jay Patterson, Jr.,

Defendant Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 23, 2017)

Before MARCUS, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Jesse James Patterson, Jr. appeals his 24-month sentence imposed after he pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  He argues a New York warrant for his arrest was not valid outside of certain geographical areas in New York.  Further, only certain New York police officers were authorized to execute the warrant in those areas.  Because the arrest warrant was executed in Georgia by Georgia law enforcement officers, Patterson says the arrest warrant was not valid.  Therefore, the search of his home at the time the arrest warrant was executed was unconstitutional, and the firearm found in his home should have been suppressed.  After careful review, we affirm.

I.

In December 2014, law enforcement officers from Utica, New York contacted the U.S. Marshals Service requesting assistance with Patterson's arrest warrant.  Because investigators had an address in Toccoa, Georgia where they thought Patterson might be, they sent the case to the U.S. Marshals Service's Fugitive Task Force office in Atlanta, Georgia.  The Atlanta office received Patterson's arrest warrant, photograph, criminal history, and a description of a car registered in his name.  Investigators in Atlanta discovered the car was registered to a specific address in Toccoa, Georgia.  They began surveilling the home at that

address and observed Patterson driving the car registered in his name and entering the home.

The next week, a team of about ten officers from the task force went to the residence.  They surveilled the home and saw Patterson arrive and go inside.  While the team surrounded the house, Patterson came outside, saw them, and quickly went back inside.  The team knocked on the door, announcing they were the U.S. Marshals Service.  When there was no answer, they forced entry.  The team first conducted a primary search, walking through the main rooms and looking in closets.  Then, they conducted a secondary search into smaller places where someone might hide.  The team eventually found Patterson in the attic, but not before one officer found a gun in the bathroom cabinet.

A federal grand jury indicted Patterson for one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Patterson moved to suppress the evidence, arguing the arrest warrant was not valid in Georgia and therefore the firearm was the fruit of an illegal search.  The arrest warrant was issued in New York.  On its face, the warrant said it "may be executed in the Counties of Oneida, Herkimer, Lewis, Oswego, Madison, and Otsego by any Police within his geographical area of employment or by any member of the division of State Police."  Patterson also pointed out that under New York state law, an arrest warrant can be executed only by the officers to whom it is addressed,

and those officers may not delegate other officers to execute the warrant except in certain conditions.  See N.Y. Crim. Proc. Law § 120.60.  Because the arrest warrant was limited on its face, Patterson argued it was clearly invalid.  Thus, he argued, the team of officers entered his home and arrested him without a valid warrant, in violation of the Fourth Amendment.

The district court found that although New York state law was violated, Patterson's federal constitutional rights were not.  Relying on this Court's decision in United States v. Gilbert, 942 F.2d 1537 (11th Cir. 1991), the district court denied Patterson's motion to suppress.  Patterson then pleaded guilty, but expressly reserved the right to appeal the suppression ruling.  The district court sentenced Patterson to 24-months imprisonment.  Patterson now appeals the district court's suppression ruling.

## II.

We review the district court's denial of a motion to suppress for clear error in its factual findings and de novo in its application of the law.  United States v. Smith, 688 F.3d 730, 737 (11th Cir. 2012).  "It is established law of this Circuit that the admissibility in federal court of the products of state searches and seizures is controlled by federal law."  United States v. Clay, 355 F.3d 1281, 1283 (11th Cir. 2004) (per curiam).

4

Patterson argues the warrant for his arrest was not valid because it was limited on its face to execution in certain New York counties by certain New York law enforcement officers.  He points out as well that New York law limits who can execute New York arrest warrants, and specifically barred Georgia officers who executed the warrant in Toccoa, Georgia.  See N.Y. Crim. Proc. Law § 120.60.

In Gilbert, federal agents executed a Florida search warrant for a defendant's home in Florida even though the warrant was limited to specific Florida law enforcement officers.  942 F.2d at 1538–39.  Florida state law also limits the execution of Florida search warrants to the "officers mentioned therein."  See id. at 1540; Fla. Stat. § 933.08.  The Gilbert panel said that "noncompliance with state law" was distinct from federal constitutional considerations.  942 F.2d at 1540–41.  Although suppression is the proper remedy for Fourth Amendment violations, we noted "[t]he Supreme Court has never directed, however, that we must suppress evidence obtained when a misdesignated state officer executes a warrant."  Id. at 1541.  This Court concluded that "although this search may not have complied with certain conditions required by the state, it did not offend any [federal] constitutional principles that support the suppression of evidence."  Id. at 1542.

Patterson says Gilbert is distinguishable because in that case, the search of the defendant's home was clearly authorized; the only question was whether another officer could carry out the search.  Patterson's arrest warrant, in contrast,

5

limited not only the types of officers who could execute the warrant, but also the geographic areas in which it could be executed—certain counties in New York. But Gilbert did not make any distinction between a state law's limitations on who can execute a warrant and where the warrant can be executed.  See id. at 1540 ("Today we decide, not who may execute a search warrant under the provisions of a Florida statute, but whether, under the facts of this case, we should suppress evidence garnered in noncompliance with state law.").  This Court said state law limitations don't matter, but rather the question is whether a federal constitutional right was violated.  See id. at 1540–41.

The geographical limitations that Patterson points out were imposed by New York.  While a New York state-law violation undoubtedly occurred here, there is no federal constitutional concern implicated.  Patterson does not challenge the probable cause determination underlying the arrest warrant.  And neither does the entry and search of his home in the process of the arrest raise any federal constitutional concerns.  See Payton v. New York, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").  We therefore affirm the district court's denial of Patterson's motion to suppress.

**AFFIRMED.**