[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12286

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ISAAC ALVAREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20221-JEM-1

_____

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Isaac Alvarez appeals his convictions for possessing marijuana with the intent to distribute, possessing a firearm and ammunition as a convicted felon, and possessing a firearm in furtherance of a drug-trafficking crime. First, he argues that the district court erred in denying his motion to suppress a firearm and drugs found in his vehicle, as well as statements made during subsequent recorded jail calls, because police had neither reasonable suspicion of criminal activity justifying a seizure under *Terry v. Ohio*, 392 U.S. 1 (1968), nor probable cause to search his car, thereby tainting that evidence and his statements. Second, he contends that 18 U.S.C. § 922(g)(1) is facially unconstitutional under *N.Y. State Rifle & Pistol Ass'n, Inc. v Bruen*, 597 U.S. 1 (2022). Third, he asserts that the district court abused its discretion in allowing Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Katherine Brady, the government's nexus witness on the § 922(g)(1) felon-in-possesion charge, to offer lay opinion testimony, instead of excluding her testimony entirely. He maintains that the government failed to comply with the expert disclosure requirement set out in Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) and thus impaired his ability to put on a defense. Fourth, he maintains that Agent Brady's opinion testimony as to the firearm's geographic origins was an expert opinion, not a lay opinion admissible under Federal Rule of Evidence 701. Fifth, he argues that the district court abused its discretion in denying his motion for a new trial

based on the government's violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing until after trial evidence of Agent Brady's prior misconduct and reprimand in a separate case. Sixth, he contends that issues surrounding Agent Brady amount to cumulative error entitling him to a new trial on, or a dismissal of, the § 922(g)(1) charge.

**I**

On December 29, 2021, an anonymous caller reported a suspicious vehicle loitering in her neighborhood. The caller reported that a vehicle with dark window tint had been parked in an area behind her home since the prior night. Officer Guy Julien of the Miami-Dade Police Department, who was familiar with criminal activity in the neighborhood after having responded to multiple calls in the area, went to investigate the reported vehicle by himself.

Officer Julien located a vehicle in the same location as reported by the call. As Officer Julien approached the vehicle on foot, he observed dark window tint that prevented him from being able to discern who or what was inside of the vehicle. Officer Julien drew his firearm as he approached the vehicle but did not raise it at the vehicle. Mr. Alvarez then opened the driver's side door as Officer Julien approached. Officer Julien raised his weapon towards Mr. Alvarez and instructed him to step out of the car with his hands raised and stand by his patrol car. Mr. Alvarez then informed Officer Julien that his wife was still inside the vehicle and Officer Julien ordered her to exit as well.

A few minutes later, Officer Giselle Reyes arrived at the scene to support Officer Julien. Officer Julien then approached the vehicle to ensure there were no other occupants and retrieve Mr. Alvarez's ID (which Mr. Alvarez had told Officer Julien was in the car). When Officer Julien opened the backdoor of the car to investigate further, he was met with "an overwhelming smell or odor of marijuana coming from the vehicle." Officer Reyes also detected "a very strong odor of marijuana" coming from the vehicle. Officer Julien eventually located Mr. Alvarez's and his wife's IDs inside the vehicle.

After reviewing the IDs and searching their police databases, the officers learned that Mr. Alvarez had an active bench warrant for driving without a license. At this point, the officers arrested Mr. Alvarez and placed him in handcuffs.

Officer Reyes returned to the vehicle and began searching the interior. She discovered a loose round of ammunition, a jar of marijuana, and eventually the Glock firearm and remaining ammunition that formed the basis for Mr. Alvarez's felon-in-possession charge. Officer Julien did not believe the jar of marijuana to be the sole source of the smell because of the strength of the odor. Officer Reyes then turned to searching the trunk and located a suitcase and duffel bag that contained a large quantity of marijuana.

While in state custody, Mr. Alvarez was recorded on numerous telephone calls from jail. He discussed being "caught with a lot of marijuana" and acknowledged that he "had a gun and [he] had more than an ounce of coke." The government would eventually

charge Mr. Alvarez with one count of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Mr. Alvarez's case proceeded to trial in March of 2023.

At trial, Agent Brady, the government's up-to-then expert—intended exclusively to prove the nexus element of the § 922(g)(1) count, i.e., the gun and ammunition's movement in interstate commerce—was challenged by Mr. Alvarez based on the government's failure to comply with Federal Rule of Criminal Procedure 16 as amended in December of 2022 (which required additional disclosures regarding expert witnesses).  Specifically, the amended Rule 16 requires "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. Pro. 16(a)(1)(G)(iii).  In light of the acknowledged Rule 16 violation, the government requested that Agent Brady be allowed to testify as a lay witness as a lesser sanction than total exclusion of her testimony.  The district court allowed Agent Brady to testify as a lay witness as to the nexus element because it concluded that the place of manufacture of a Glock firearm was not a topic that required expertise and because the court believed Agent Brady could testify as a lay witness as to the nexus element based on her experience in the field.

Agent Brady explained that she was familiar with where Glock firearms were manufactured through her training and experience as an ATF special agent. Agent Brady then testified—over Mr. Alvarez's objections—that most Glock firearms are manufactured in Austria and that any models manufactured in the United States are manufactured in Georgia. Agent Brady concluded that the Glock at issue in Mr. Alvarez's case must have been manufactured outside of Florida. Agent Brady testified similarly with respect to the ammunition. She first identified the manufacturer by referring to markings on the rounds. She then concluded that none of the identified ammunition manufacturers had any production facilities in Florida. There was no cross-examination by the defense of Agent Brady.

During the trial, and independently of Agent Brady's testimony, the firearm was identified as an operable Glock 21 by a Miami-Dade Police Department criminalist who had test fired the weapon. Photos of the firearm and the ammunition were also admitted into evidence without objection. The markings on the firearm("Glock 21," "Austria," "Made in Austria," and "Glock, Inc., Smyrna, Ga.") were clearly visible in the admitted photographs.

## II

We first address Mr. Alvarez's argument regarding the district court's denial of his motion to suppress. Mr. Alvarez asks that we vacate his convictions and direct the district court to suppress much of the evidence presented at trial because the initial stop was not justified by reasonable suspicion and because the stop was a *de*

*facto* arrest the moment Officer Julien drew his weapon and as he conducted the stop with it drawn. Mr. Alvarez then contends that, because the initial stop was illegal, everything gathered afterwards from the car and recorded during the jail phone calls must be excluded as fruits of the poisonous tree. We disagree with Mr. Alvarez.

**A**

In reviewing the denial of a motion to suppress, we review factual determinations for clear error and the application of law to the facts *de novo*. *See United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). And we construe all facts in the light most favorable to the prevailing party below. *See id*. We can affirm the denial of a motion to suppress on any ground supported by the record. *See United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV. Courts must examine the totality of the circumstances to determine whether a search or seizure is reasonable. *See United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). Reasonableness under the totality of the circumstances is the "touchstone" of a Fourth Amendment analysis. *See Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977). It "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id*. at 109 (quotations omitted).

There are three basic categories of police-citizen encounters: (1) police-citizen communications involving no coercion or

detention, (2) brief seizures or investigative detentions, and (3) full-scale arrests. *See United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989). The second category, also called *Terry* stops, "involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

Traffic stops are "more analogous" to *Terry* stops than to formal arrests. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015). An officer making a traffic stop must have reasonable suspicion, i.e., "a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc).

Florida law prohibits "operating" a car with front windows that are "nontransparent." Fla. Stat. Ann. § 316.2953. Operating a car with windows tinted beyond the statutorily permissible amount is "a noncriminal traffic offense, punishable as a nonmoving violation." *Id.* We have held that, when an officer knows from his experience that a car's windows are too dark under Florida law, probable cause exists for a traffic stop. *See United States v. Pierre*, 825 F.3d 1183, 1192 (11th Cir. 2016).

Under *Terry*, law enforcement officers may seize an individual for a brief, investigatory stop if they have a reasonable suspicion that (1) the individual was involved, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the initial circumstances justifying the interference. *See Lewis*, 674 F.3d at 1303. Though "reasonable suspicion" is a lower

23-12286                Opinion of the Court                9

standard than probable cause, it still requires an objective justification. *See Id.* An officer does not have to actually observe illegal conduct to have reasonable suspicion, but he needs "more than just a hunch" that criminal activity is afoot. *Id.* (quotations omitted). He must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *See Terry*, 392 U.S. at 21. Presence in a high-crime area is one factor that can contribute to the creation of reasonable suspicion, although it is not alone sufficient to support a finding of reasonable suspicion of criminal activity. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

In the second part of the *Terry* test, "determining whether the stop went too far and matured into arrest before there was probable cause, we consider whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (quotations omitted and alterations accepted). Officer Julien here had reasonable suspicion and probable cause to perform the initial stop of Mr. Alvarez's vehicle because of his observation of the car's dark window tint as well as the call reporting the vehicle for loitering in an area Officer Julien knew to be a frequent spot for dumping stolen cars or engaging in prostitution. *See Pierre*, 825 F.3d at 1192. Officer Julien's actions during the course of the stop were consistent with what the Supreme Court has determined is "an officer's mission during a traffic stop," including "checking the driver's license, determining whether there are outstanding warrants

against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 354.

While conducting a traffic stop, an officer may ask the driver and other passengers to exit the vehicle. *See Mimms*, 434 U.S. at 111; *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). This is because the Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile," and the additional intrusion is *de minimis*. *See Mimms*, 434 U.S. at 110. Furthermore, the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Wilson*, 519 U.S. at 414.

We have held that officers "draw[ing] their weapons does not, as a matter of course, transform an investigatory stop into an arrest." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). Thus, the fact that Officer Julien approached the vehicle in this case with his service weapon drawn did not immediately transform the investigative stop into an arrest. Even when the weapon was raised toward Mr. Alvarez the stop was not transformed into an arrest. Officer Julien was the only officer on scene dealing with a vehicle he could not see into; he could not know who or what might still be in the vehicle, he could not know what Mr. Alvarez or any other occupants might do when suddenly exiting the vehicle, and he was by himself. In this context, drawing his service weapon "was a reasonable action designed to provide for the safety of the [officer]." *Hastamorir*, 881 F. 2d at 1557 (finding that drawing weapons and handcuffing suspects during course of a *Terry* stop

reasonably provided for officers' safety even with multiple officers on the scene).  Officer Julien's inspection of the backseat of the vehicle to ensure the vehicle had no other occupants was also justified to guarantee his safety during the stop.

Officer Julien's search of the vehicle was supported by adequate probably cause based on his detection of a strong odor of marijuana.  Officers may conduct a warrantless search of a car if it is readily mobile and probable cause exists to believe it contains contraband. *See United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003).  We have held that the "ready mobility" element of the automobile exception "is satisfied by the 'ready mobility' *inherent* in all automobiles that reasonably appear to be capable of functioning." *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990) (emphasis in original).  The smell of marijuana creates probable cause to search a vehicle. *See United States v. Rivera*, 595 F.2d 1095, 1099 (5th Cir. 1979). *Cf. United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (holding that probable cause to search a house existed when an officer smelled marijuana coming from an open door). Here, once Officer Julien and Officer Reyes detected the strong odor of marijuana in the vehicle, they had probable cause to search the vehicle because of its apparent mobility.

In sum, the district court did not err in denying the motion to suppress because there was no Fourth Amendment violation in this case. Officer Julien had reasonable suspicion for the initial stop, and both he and Officer Reyes had probable cause to search the vehicle based on the strong smell of marijuana.

### III

We next address Mr. Alvarez's challenge to the constitutionality of § 922(g)(1) under *Bruen*.  We have recently rejected the same argument in *United States v. Dubois*, ___ F.4th ___, 2025 WL 1553843, at *1 (11th Cir. 2025).  Mr. Alvarez's equivalent challenge to the constitutionality of § 922(g)(1) is foreclosed by our binding decision in *Dubois*.

### IV

We move to Mr. Alvarez's argument that the district court abused its discretion when it allowed Agent Brady to testify as a lay witness.  Mr. Alvarez contends that Agent Brady's testimony should have been entirely excluded as the sanction for the government's failure to file the proper Rule 16 disclosures.

### A

We review a district court's decision concerning the imposition of a Federal Rule of Criminal Procedure 16(d) sanction for a discovery violation for abuse of discretion. *See United States v. Fernandez*, 780 F.2d 1573, 1576 (11th Cir. 1986).  When the government violates Rule 16's disclosure requirements, but the district court nevertheless admits the testimony, we will not reverse the conviction unless the defendant establishes that an error affected his substantial rights. *See United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999).  "The degree to which a defendant's rights suffer as a result of a discovery violation is determined by considering how the violation affected his ability to present a defense and,

to a lesser degree, the weight of all the other evidence introduced." *United States v. Perez-Garcia*, 904 F.2d 1534, 1546 (11th Cir. 1990).

## B

Mr. Alvarez has not established that his substantial rights were affected or prejudiced sufficiently to warrant a new trial due to the admission of Agent Brady's lay testimony. The government's violation had minimal effect on Mr. Alvarez's ability to present a defense at trial because the weight of the other admitted evidence was sufficiently strong to render Agent Brady's testimony superfluous. Further, to the extent Mr. Alvarez now suggests that the Glock firearm could be an airsoft replica, he was free to investigate that possibility during trial or to cross examine Agent Brady on this premise once her testimony was accepted but chose not to.[1]

We have stated that there was "a clear indication of interstate commerce" when a gun was seized in Florida but "bore an imprint indicating that it had been manufactured in Atlanta." *United States v. Brantley*, 68 F.3d 1283, 1288 (11th Cir. 1995). In another § 922(g)(1) case, we reviewed the government's failure to introduce evidence that the gun had traveled in interstate commerce

---

[1] A Miami-Dade Police Department criminalist testified that the firearm was a Glock 21, that it was tested, and that it could fire the ammunition the markings indicated it could and which it was loaded with when found. Mr. Alvarez now produces only a single online retailer listing for an airsoft replica of a Glock 19, not a Glock 21, with a bright orange tip and which cannot load or fire real bullets to bolster this position. Even assuming that Mr. Alvarez could present new evidence to us, we find any argument as to the firearm's authenticity in this case unpersuasive.

to determine whether a reasonable jury "was rationally able to find that every element of the charged crime[#] was established by the government beyond a reasonable doubt." *United States v. Clay*, 355 F.3d 1281, 1285-86 (11th Cir. 2004) (quotations and emphasis omitted). The only evidence of the firearm's origin in that case was the firearm itself, bearing a marking stating "'Colt Manufacturing Company, Hartford, Ct.,'" which had been introduced into evidence without objection. *See id.* at 1286. Here the "Made in Austria" and "Glock, Inc., Smyrna, Ga." markings on the firearm sufficiently proved the nexus element without any need for additional lay or expert witness testimony.

Mr. Alvarez focuses on what he understands to be the centrality of Agent Brady's testimony to his conviction. But photographs of the firearm with the markings were already admitted into evidence without objection prior to Agent Brady ever taking the stand. Applying the principles set out in *Clay* and *Brantley*, that evidence of the firearm's markings was alone sufficient to prove the nexus element in this case. Mr. Alvarez' ability to defend against the admission of the firearm photos was not substantially affected by the subsequent admission of Agent Brady's testimony. On this record, even assuming error, Mr. Alvarez' substantial rights have not been sufficiently affected or prejudiced to require reversal of his conviction.

**V**

We turn next to Mr. Alvarez's additional argument that Agent Brady's lay testimony actually constituted an expert opinion subject to the rigors of Federal Rule of Evidence 702.

We review a district court's evidentiary rulings for an abuse of discretion, such as when the district court bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See United States v. Graham*, 123 F.4th 1197, 1248 (11th Cir. 2024). "However, errors in admitting opinion testimony as lay testimony are subject to harmless error review." *United States v. Stahlman*, 934 F.3d 1199, 1222 (11th Cir. 2019). We will not reverse a conviction based on an erroneous evidentiary ruling unless that ruling "had a substantial influence on the outcome of the case or leaves us in grave doubt as to whether the error affected the outcome." *Id.*

As already discussed above, the firearm in the instant case—stamped with the markings "Made in Austria" and "Glock, Inc., Smyrna, Ga."—was sufficient evidence to prove the nexus element of the § 922(g)(1) charge under our precedent. Images of the firearm and its markings were admitted into evidence independent of Agent Brady's testimony and without objection. On this record, any error in allowing Agent Brady to offer expert opinion testimony on the nexus element as a lay witness was necessarily harmless because proof that sufficiently established that the gun had traveled in interstate or foreign commerce had already been admitted.

## VI

Mr. Alvarez also contends that the district court erred in denying his motion for a new trial premised on the post-trial discovery of *Brady* material related to Agent Brady. Mr. Alvarez asserts that earlier revelation of Agent Brady's reprimand for misconduct with respect to a different nexus report would be likely to change the outcome of the trial with respect to the § 922(g)(1) charge because such information could have undermined her credibility before the jury.

We review a district court's denial of a motion for a new trial based on *Brady* material disclosed post-trial for abuse of discretion. *See Clark*, 32 F.4th at 1086. To make out a *Brady* claim based on impeaching evidence, a defendant must demonstrate that, if he had had the evidence, there is a reasonable probability that the outcome of the trial would have been different. *See United States v. Fernandez*, 136 F.3d 1434, 1438 (11th Cir. 1998). The question is whether the defendant received a fair trial with a "verdict worthy of confidence," even without the disclosure of the *Brady* material. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

In *Clark*, we considered a *Brady* claim when the government failed to disclose that its nexus expert in a § 922(g)(1) case had been internally disciplined for prematurely destroying evidence. *See* 32 F.4th at 1086. We concluded that the defendant's verdict was worthy of confidence because, even if evidence of the expert's misconduct undermined his credibility, there was not a reasonable probability that it would have affected the jury's conclusion that the gun

was manufactured in another state, as the gun said "Prescott, AZ." *Id.* Accordingly, the district court did not abuse its discretion in denying the motion for a new trial based on *Brady* material. *See id.* at 1087. The same result is warranted here. The firearm at issue was stamped with the markings "Made in Austria" and "Glock, Inc., Smyrna, Ga." and this evidence was admitted without objection separately from Agent Brady's testimony.

## VII

An appellant abandons any argument not briefed on appeal, made in passing, or raised briefly without supporting arguments or authority, even if he properly preserves the issue at trial. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). Here, Mr. Alvarez has abandoned any argument for cumulative error because he raised the issue briefly and without any supporting arguments or authority.

## VIII

Mr. Alvarez's convictions are affirmed.

**AFFIRMED.**