United States Court of Appeals,

Eleventh Circuit.

No. 94-8979.

UNITED STATES of America, Plaintiff-Appellee,

v.

Eugene Kenny McALLISTER, Defendant-Appellant.

March 8, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-260), Richard C. Freeman, Judge.

Before KRAVITCH and HATCHETT, Circuit Judges, and HILL, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The constitutionality of 18 U.S.C. § 922(g)(1), which prohibits a felon from possessing a firearm, is the main issue presented in this appeal. We reject appellant's argument that in light of the recent Supreme Court decision in *United States v. Lopez,* --- U.S. ----, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Congress exceeded its Commerce Clause power by regulating the mere possession of a gun. In addition, appellant claims that improper comments by the prosecutor and improper use of evidence at his trial constituted reversible error. We reject these claims also and affirm McAllister's conviction.

I.

Eugene McAllister was convicted by a jury of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On April 9, 1991, McAllister went to The Gunshop in Decatur, Georgia

to pick up a gun he had paid for at least 15 days earlier.[1]  Before taking the gun, he filled out Bureau of Alcohol, Tobacco and Firearms Form 4473.  On the form, McAllister denied ever having been convicted of a crime punishable by imprisonment for a term exceeding one year.  In fact, he had a prior felony conviction.

At McAllister's trial, the government demonstrated that the gun was manufactured in California and was shipped to South Carolina in 1982.  The gun shop clerk testified that on April 9 he had handed the gun to McAllister, who carried it from the shop.  McAllister's wife, Denise Flemister, however, testified that she had accompanied McAllister to the store and that it was she who had taken the gun home.  Flemister further testified that she, and not McAllister, remained in possession of the gun until it was allegedly stolen within 7-10 days of purchase.  During cross-examination, Flemister admitted that prior to trial she did not contact either the Bureau of Alcohol Tobacco and Firearms ("A.T.F.") or the U.S. Attorney's office to inform either office that McAllister had never possessed the gun.

## II.

Because McAllister raises the constitutional challenge for the first time on appeal, we must determine whether he has waived his claim.  As a general rule, this court will not address an issue not decided by the district court.  Application of this rule, however, is at the discretion of the appellate court.  *See Lattimore v. Oman Constr.*, 868 F.2d 437 (11th Cir.1989) (discretion

---

[1]A local ordinance required a 15-day waiting period before a purchaser could receive a gun.

to review pure question of law or to avoid miscarriage of justice).

At the time of McAllister's trial, the Supreme Court had not yet decided *Lopez.* In light of the Supreme Court's prior decision, *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977) (holding, in the context of the predecessor statute to § 922(g), that the interstate commerce element is met by demonstrating a "minimal nexus"), and of this court's decision in *United States v. Standridge,* 810 F.2d 1034, 1040 (11th Cir.) (same), *cert. denied,* 481 U.S. 1072, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987), a constitutional challenge to § 922(g)(1) would have been futile at that time. *See United States v. Bell,* 70 F.3d 495, 497 (7th Cir.1995) (stating that *Scarborough* rendered a pre-*Lopez* challenge to § 922(g)(1) "futile, even frivolous"). It would be manifestly unjust to refuse to allow McAllister's claim because he failed to raise it in the district court when doing so would have served no purpose. *See Lattimore,* 868 F.2d 437.

Reaching the merits of McAllister's constitutional challenge,[2] we hold that 18 U.S.C. § 922(g)(1) is constitutional.[3] Eighteen U.S.C. § 922(g), in pertinent part, provides:

---

[2]In his brief, McAllister claims only to be raising a challenge to the statute "as applied." However, in his argument he attacks the statute both on its face and as applied. We will address both arguments.

[3]We are not alone in our conclusion that this statute is constitutional. *See United States v. Sorrentino,* 72 F.3d 294, 296-97 (2d.Cir.1995); *United States v. Bell,* 70 F.3d 495, 498 (7th Cir.1995); *United States v. Rankin,* 64 F.3d 338, 339 (8th Cir.) (same), *cert. denied,* --- U.S. ----, 116 S.Ct. 577, 133 L.Ed.2d 500 (1995); *United States v. Mosby,* 60 F.3d 454, 456 (8th Cir.1995); *United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir.1995) (same).

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ...

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

McAllister argues that like the statute in *Lopez,* § 922(g)(1) does not substantially affect interstate commerce and thus exceeds Congress's authority to regulate. In *Lopez,* the Supreme Court struck down the Gun-Free School Zones Act, 18 U.S.C. § 922(q), which prohibited a person from possessing a gun while in a "school zone." The Court relied on the fact that the statute "by its terms has nothing to do with "commerce' or any sort of economic enterprise, however broadly one might define those terms." --- U.S. at ----, 115 S.Ct. at 1631. In contrast, § 922(g) makes it unlawful for a felon to "possess *in or affecting commerce,* any firearm or ammunition." 18 U.S.C. § 922(g) (emphasis added). This jurisdictional element defeats McAllister's facial challenge to the constitutionality of § 922(g)(1).[4]

McAllister further claims that even if the statute is facially

---

[4]The Court in *Lopez* contrasted that statute with 18 U.S.C. § 1202(a), the predecessor statute to § 922(g). The Court wrote:

> Section 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce.... Unlike the statute in *Bass,* [18 U.S.C. § 1202(a) ], § 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.

--- U.S. at ----, 115 S.Ct. at 1631.

valid, it is unconstitutional as applied to him because the government did not demonstrate how his purely intrastate possession affected interstate commerce. He argues that *Lopez* marks a significant change, rendering suspect the "minimal nexus" requirement established by the Supreme Court in *Scarborough.* In that case the Court held that the interstate nexus requirement for the predecessor statute to § 922(g) was met once the government demonstrated that the gun had previously travelled in interstate commerce, *Scarborough,* 431 U.S. at 575, 97 S.Ct. at 1969; *see also Standridge,* 810 F.2d at 1040.

McAllister misunderstands the scope of *Lopez.* The statute at issue in that case prohibited possession of a firearm within a school zone. The Court held that in passing § 922(q) Congress exceeded its Commerce Clause power because that statute was

> not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

*Lopez* at ----, 115 S.Ct. at 1631. In contrast to § 922(q), § 922(g) is an attempt to regulate guns that have a connection to interstate commerce; the statute explicitly requires such a connection. When viewed in the aggregate, a law prohibiting the possession of a gun by a felon stems the flow of guns in interstate commerce to criminals. Nothing in *Lopez* suggests that the "minimal nexus" test should be changed. Because the government demonstrated that the firearm possessed by McAllister previously had travelled in interstate commerce, the statute is not unconstitutional as

applied to him. *See United States v. Bell,* 70 F.3d 495; *United States v. Shelton,* 66 F.3d 991 (8th Cir.1995); *United States v. Hanna,* 55 F.3d 1456 (9th Cir.1995).

## III.

McAllister next contends that the prosecutor made both improper comments and improper use of evidence during his closing argument. To justify a new trial, the prosecutor's statement must be improper and must prejudice a substantial right of the defendant. *United States v. Eyster,* 948 F.2d 1196 (11th Cir.1991).

The first allegedly improper comment occurred when the prosecutor told the jury that it was not until McAllister's trial that Flemister told A.T.F. and the U.S. Attorney that it was she, not her husband, who had possessed the gun. McAllister argues that this comment created several impermissible implications. First, he argues that by implying that the case would have been dismissed had Flemister come forward earlier, the government shifted the burden to McAllister to prove he was not guilty when he was first indicted. We agree with the government, however, that the prosecutor's comments are a permissible attempt to challenge the witness's credibility. *See, e.g., United States v. Garate-Vergara,* 942 F.2d 1543, 1551 (11th Cir.1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1212, 117 L.Ed.2d 451; *and cert. denied,* 506 U.S. 1007, 113 S.Ct. 622, 121 L.Ed.2d 555 (1992), *and cert. denied,* --- U.S. ----, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993).

McAllister also claims that this comment went beyond the evidence by suggesting that Flemister had been aware of McAllister's indictment despite the fact that there was no evidence

as to what Flemister knew prior to trial. Although a prosecutor may not suggest personal knowledge of evidence not admitted at trial, *Eyster,* 948 F.2d 1196 (11th Cir.1991), this is not what happened here. The prosecutor apparently attempted to impeach Flemister's credibility by reiterating the very testimony Flemister had given on cross-examination. Had McAllister wanted to show that Flemister was unaware of the indictment, he could have attempted to do so through redirect examination of the witness.[5]

The second allegedly improper argument occurred when the prosecutor stated in closing that a person who would lie on Form 4473 regarding his status as a convicted felon "might ask his wife to fabricate a little story to get out of a felony." McAllister contends that this argument was an improper use of the Form 4473 evidence because it impermissibly impugned his character in order to win the conviction, without the defendant having put character in issue. Although "the government may not rely on the defendant's bad character to win a conviction unless the defense puts character in issue," *United States v. Blakey,* 14 F.3d 1557 (11th Cir.1994), we do not decide whether this occurred here. Rather, because we find upon review of the entire record that the alleged error, if any, was harmless, we conclude that McAllister's rights were not substantially prejudiced. *United States v. McRae,* 593 F.2d 700, 706 (5th Cir.) (a determination of prejudicial effect of a prosecutor's improper comments is contextual and requires examination of the record), *cert. denied,* 444 U.S. 862, 100 S.Ct.

---

[5]McAllister also argues that the prosecutor's comment was analogous to a comment on a defendant's post-*Miranda* silence. We see no merit to this claim.

128, 62 L.Ed.2d 83 (1979).

                              IV.

    We hold that § 922(g)(1) is not an unconstitutional exercise of Congress's power under the Commerce Clause, nor is its application unconstitutional in this case.  We also hold that comments made by the prosecutor during his closing argument were either proper or did not substantially prejudice McAllister's rights.  Accordingly, McAllister's conviction is AFFIRMED.