[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2006
THOMAS K. KAHN
CLERK

No. 05-15259
Non-Argument Calendar

_____

D. C. Docket No. 04-00055-CR-01-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

JORGE TAFOLLA BUENROSTRO,
a.k.a. Jorge Tafolla,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(June 29, 2006)**

Before DUBINA, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Jorge Tafolla Buenrostro appeals his convictions for possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and 851. Buenrostro argues that: (1) Section 922(g)(1) is an unconstitutional exercise of Congress's Commerce Clause power, both on its face and as applied to his case; (2) there was not sufficient evidence to support his convictions under § 922(g) and 21 U.S.C. § 851; and (3) there was not sufficient evidence to support his conviction for methamphetamine distribution

The government cross-appeals Buenrostro's sentence for methamphetamine distribution, arguing that he should have been sentenced to a statutory minimum of 20 years' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A)(viii), instead of 10 years' imprisonment, pursuant to § 841(b)(1)(B)(viii), because the district court should have found him responsible for 50 grams or more of methamphetamine.

First, Buenrostro's constitutional challenges to § 922(g)(1) must fail. We have consistently upheld the facial constitutionality of § 922(g)(1). See United States v. Scott, 263 F.3d 1270, (11th Cir. 2001); United States v. McAllister, 77 F.3d 387, 389-90.(11th Cir. 1996). Furthermore, Buenrostro's as applied challenge, as well as his challenge to the sufficiency of the evidence, must fail. An expert testified at trial that, based on their make and serial numbers, the guns found

2

at Buenrostro's residence were manufactured in California and Florida, could not have been manufactured in Georgia, and had traveled in and affected interstate commerce. Thus the requisite interstate nexus of the firearm was satisfied. See Scott, 263 F.3d at 1274 (holding that an interstate nexus was demonstrated by the government when an ATF Special Agent testified that the .25 caliber Raven Arms semiautomatic pistol that the defendant had possessed was manufactured in California and had moved in interstate commerce to Georgia, where the defendant was caught with the weapon).

Second, we reject Buenrostro's argument that there was insufficient evidence upon which to find him a convicted felon. The record provides sufficient evidence upon which a reasonable jury could find beyond a reasonable doubt that Buenrostro was a convicted felon because (1) the certified copy of the Texas conviction was properly admitted as non-testimonial, as it was routinely and mechanically kept and prepared long before the alleged offenses, see United States v. Cantellano, 430 F.3d 1142, 1145-46(11th Cir. 2005), cert. denied, 126 S.Ct. 1604 (2006) (citation omitted), and (2) the certified conviction was accompanied by Probation Officer Printup's testimony that Buenrostro was his probationer—under Printup's supervision, paying probation fees, and reporting to Printup—for almost an entire year. Accordingly, the government provided

3

sufficient evidence for the jury to determine that Buenrostro was a convicted felon for purposes of satisfying 18 U.S.C. § 922(g) and 21 U.S.C. § 851.

Finally, we reject the argument that there was insufficient evidence to support a conviction for distribution of methamphetamine. First, a number of law enforcement officials testified that they (1) witnessed Buenrostro hand a blue Wal-Mart shopping bag to confidential informant Marco Marquez, the contents of which were later found to be methamphetamine, and (2) recovered from Buenrostro's residence digital scales and plastic baggies, which were likely used in the distribution of illegal drugs. In fact, one detective specifically testified that he and another detective had searched Marquez's vehicle before the March 30 meeting between Marquez and Buenrostro, and the drugs in the Wal-Mart shopping bag could not have come from any source other than Buenrostro. The jury was shown the pound of a mixture containing methamphetamine and a stipulation, signed by Buenrostro, that the mixture weighed 443.6 grams, with a 24 percent purity level, containing 106.8 grams of pure methamphetamine, and the box of baggies and the scales recovered from Buenrostro's residence. Further, Marquez testified that he and Buenrostro agreed on March 3, 2004 that Buenrostro would front ("loan") him one pound of methamphetamine, and the two met on March 30 to complete the transaction. This testimony was accompanied by a

4

recorded conversation from March 30 between the two men, in which Buenrostro mentioned twice that there were four ounces of a substance. The jury also heard evidence that Marquez stood to gain personally by testifying favorably for the government in Buenrostro's trial. Despite Buenrostro's contention to the contrary, Marquez's testimony—corroborated by multiple exhibits and the testimony of multiple law enforcement officers—was not incredible as a matter of law. Thus, there was a sufficient basis for a reasonable trier of fact to determine that Buenrostro knowingly and intentionally distributed methamphetamine. See 21 U.S.C. § 841(a)(1). Accordingly, Buenrostro's challenge to this conviction fails.

On cross-appeal, the government argues that the district court clearly erred in failing to enhance Buenrostro's statutory minimum sentence based on the amount of pure methamphetamine to which he stipulated. The government asserts that the court's finding that the lack of a jury finding regarding the weight of pure amphetamine precluded the enhancement was in error because Buenrostro admitted, via stipulation, that the offense involved more than 100 grams of pure methamphetamine—an amount that triggered the statutory minimum enhancement. Further, the government argues that, even after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a sentencing court is still permitted to make findings of fact that increase a statutory minimum sentence.

5

The statutory penalties for controlled substance offenses under 21 U.S.C. § 841(a)(1) are listed subsection (b) of that statute. See 21 U.S.C. § 841(b). For a defendant with a prior felony drug conviction who committed an offense involving:

> 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers[,] . . . [the sentence is] . . . a term of imprisonment which may not be less than 20 years and not more than life imprisonment[.]

21 U.S.C. § 841(b)(1)(A)(viii). On the other hand, for a defendant with a prior felony drug conviction who committed an offense involving:

> 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers[,] . . . [the sentence is] . . . a term of imprisonment which may not be less than 10 years and not more than life imprisonment[.]

21 U.S.C. § 841(b)(1)(B)(viii). Accordingly, the issue here concerns the calculation of the statutory minimum sentence, not the Sentencing Guidelines.

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added). Then, in Booker, the

6

Supreme Court "reaffirm[ed] [its] holding in <u>Apprendi</u>: Any fact (other than a prior conviction) which is necessary to support <u>a sentence exceeding the maximum</u> authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved by a jury beyond a reasonable doubt." <u>Id.</u> at 244, 125 S.Ct. at 756 (emphasis added).

We have held that, despite <u>Booker</u>'s remedial holding that the Sentencing Guidelines are merely advisory, district courts remain bound by statutory minimum sentences. <u>See</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005). So long as the district court applies the guidelines as advisory, nothing in <u>Booker</u> prohibits it from making, under a preponderance-of-the-evidence standard, additional factual findings that go beyond a defendant's admission. <u>United States v. Chau</u>, 426 F.3d 1318, 1324 (11th Cir. 2005).

Here, the district court clearly erred by finding that "[t]he issue was still for the jury to find as to what the defendant was responsible for." Indeed, the district court had the authority to find, by a preponderance-of-the-evidence standard, the amount of actual methamphetamine for which Buenrostro was responsible. <u>See</u> <u>Chau</u>, 426 F.3d at 1324. Moreover, as <u>Apprendi</u> and <u>Booker</u> do not apply to statutory <u>minimum</u> sentences, and Buenrostro faced a maximum sentence of life imprisonment regardless of which drug quantity he was held accountable for, had

7

the district court determined the mandatory minimum sentence based on its own drug quantity finding, there would have been no constitutional error.  Accordingly, we vacate and remand to allow the district court to make findings regarding what drug quantity and purity it believes a preponderance of the evidence supports.

**AFFIRMED in part; VACATED and REMANDED in part.**