[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15820
Non-Argument Calendar

_____

D.C. Docket No. 8:13-cr-00554-VMC-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTHONY LEE ERITY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 5, 2015)

Before MARCUS, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Anthony Lee Erity appeals his conviction for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2).

On appeal, Mr. Erity contends that (1) the district court abused its discretion by admitting testimony about his prior attempted sale of narcotics; (2) the district court abused its discretion in instructing the jury regarding his attempted flight; (3) the district court erred in allowing the government to elicit substantially the same testimony from its lay witness as its expert witness; and (4) the felon-in-possession statute, 18 U.S.C. § 922(g), is unconstitutional.  For the reasons that follow, we affirm.

## I

We assume the parties are familiar with the case and summarize the proceedings and facts only insofar as necessary to provide context for our decision.

Prior to trial, Mr. Erity filed a motion *in limine* to preclude the government from eliciting testimonial evidence that a confidential informant had observed Mr. Erity sell MDMA[1] and that Mr. Erity had offered to sell the drug to the CI.  Mr. Erity argued that any drug-related evidence was not intrinsic to the charged conduct, that the government could not prove the uncharged conduct, and that the accusation of a CI was not sufficient to allow prejudicial testimony to be introduced under Rule 404(b).  The district court ultimately denied Mr. Erity's motion.

---

[1] MDMA is the more commonly known name for the controlled substance 3, 4-methylenedixymethamphetamine.  *See United States v. Hristov*, 466 F.3d 949, 951 (11th Cir. 2006).

At trial, Special Agent Michael Coad testified that the CI "believed he could purchase firearms and possibly narcotics from [Mr. Erity]." D.E. 120 at 158.[2] Mr. Erity now appeals, arguing that the district court erred in permitting the government to elicit any testimony that he was involved in the sale of narcotics because it was irrelevant to the charged offense and was prejudicial in providing the jury an inaccurate account of his prior involvement with both illegal drugs and firearms.

We assume, without deciding, that the admission of Special Agent Coad's testimony relating to Mr. Erity's narcotics involvement was not intrinsic to the charged offense (possessing a firearm as a felon). An error, however, is harmless unless it has a substantial influence on the case's outcome or leaves a grave doubt as to whether the error affects the outcome. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005). The government has the burden of establishing that the error was harmless, *see United States v. Sweat*, 555 F.3d 1364, 1367 (11th Cir. 2009), and here the evidence at trial shows beyond a reasonable doubt that the admission of this extrinsic evidence was harmless. *See Henderson*, 409 F.3d at 1300.

---

[2] The testimony of Special Agent Coad regarding information he learned from the CI appears to be hearsay, but Mr. Erity did not object on this basis at trial and does not raise a hearsay challenge on appeal.

3

The government presented direct evidence that Mr. Erity sold a firearm to the CI, made admissions to law enforcement about knowingly transporting the firearm, photographed the firearm, possessed the firearm in his vehicle, and had his fingerprints on the gun manual located in the firearm container. Given this evidence, the extrinsic evidence of narcotics involvement did not substantially affect the outcome.

## II

Mr. Erity also argues that the district court abused its discretion in instructing the jury regarding flight. He argues that, because flight is an admission by conduct, the jury should have been instructed on flight no differently than any other admission or confession. According to Mr. Erity, the district court failed to inform the jury that they must consider the evidence "with great care," as it was required to do for admissions. The jury instruction regarding flight read as follows:

> Intentional attempts to flee by a person when a crime has been committed is not, of course, sufficient in itself to establish the guilt of that person, but intentional attempts to flee under those circumstances is a fact which, if proved, may be considered by the jury in light of all the other evidence in the case in determining the guilt or innocence of that person.

> Whether or not the Defendant's conduct constituted an attempt to flee is exclusively for you, as the jury, to determine. And if you do so determine that the attempted flight showed a consciousness of guilt on the Defendant's part, the significance to be attached to that evidence is also a matter exclusively for you as a jury to determine.

4

> I do remind you that in your consideration of any evidence of attempted flight, if you should find that there was attempted flight, you should consider that there may be reasons for this which are fully consistent with innocence. And, may I suggest to you that a feeling of guilt does not necessarily reflect actual guilt of a crime which you may be considering.

D.E. 85 at 16. We review the legal correctness of a jury instruction *de novo*, but we defer to the district court on questions of phrasing, absent an abuse of discretion. *See United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000).

Though circumstantial, evidence of flight is generally admissible to establish a defendant's guilt. *See United States v. Borders*, 693 F.2d 1318, 1324-26 (11th Cir. 1982). Giving a jury instruction on flight is not an abuse of discretion where the evidence could lead a reasonable jury to conclude that the defendant fled to avoid apprehension for the charged crime. *See United States v. Williams*, 541 F.3d 1087, 1089 (11th Cir. 2008). With respect to phrasing, a flight instruction is not erroneous if it informs jurors that it is up to them to determine whether the evidence proved flight and properly explains the potential weaknesses in the relevant chain of inferences. *See Borders*, 693 F.2d at 1328. [3] Further, we have upheld flight instructions of varying degrees of specificity. *See, e.g.*, *Borders*, 693 F.2d at 1327-28; *Williams*, 541 F.3d at 1089.

---

[3] The four inferences are "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977).

In this case, the evidence permitted the jury to conclude that Mr. Erity's flight was motivated by consciousness of guilt. The jury heard evidence that after he was indicted Mr. Erity told a friend that he planned to move to Canada to avoid prosecution. Mr. Erity talked of obtaining a fake driver's license, passport, and social security card, and wanted to use his friend's identity to leave the United States. Further, in an audio-recording Mr. Erity spoke of his plans to obtain false identification to leave the country after fingerprint evidence had been found against him with respect to the charged felon-in-possession offense. This evidence may have permitted the jury to conclude that Mr. Erity was planning on leaving the country for reasons other than guilt, but "the reason for a defendant's flight is a question for the jury." *United States v. Wright*, 392 F.3d 1269, 1279 (11th Cir. 2004).

In short, the district court did not abuse its discretion by giving the flight instruction. The instruction was extremely similar to the flight instruction upheld in *Borders*; Mr. Erity's contrary argument is not supported by our precedent.

### III

Mr. Erity further asserts that the district court erred in allowing the government's lay witness, Robert Saye, to testify about matters falling within the parameters of Federal Rule of Evidence 702. Because Mr. Saye testified as a lay witness about "secreter" status and the lack of fingerprint evidence, Mr. Erity

argues, the testimony did not comply with the standards set out in Rule 702. Mr. Erity further contends that the testimony was materially indistinguishable from that of the government's expert witness, and was offered solely to bolster the expert testimony.

The admissibility of lay opinion testimony is reviewed for abuse of discretion. *See United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011). Improper lay opinion testimony is generally subject to a harmless error analysis. *Henderson*, 409 F.3d at 1300. Because Mr. Erity did not object to Mr. Saye's testimony at trial, however, and raises these Rule 702 arguments for the first time on appeal, we review only for plain error. *See United States. v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).

Plain error occurs when there is (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness of the judicial proceedings. *See United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014). "An error is 'plain' if controlling precedent from the Supreme Court or the Eleventh Circuit establishes that an error has occurred." *Id.* "A substantial right is affected if the appealing party can show that there is a reasonable probability that there would have been a different result had there been no error." *United States v. Bennett*, 472 F.3d 825, 831-32 (11th Cir. 2006).

We assume, without deciding, that Mr. Saye's lay opinion testimony regarding "secreter" status was improper.  When the government asked Mr. Saye to explain, based on his ten years of crime scene investigative work, how someone could touch an item and not leave a fingerprint, Mr. Saye responded "[t]hat's possible because 80 percent of the human population is a secreter, 20 percent of the population is not a secreter.  If you're not a secreter, you're not leaving fingerprints."  D.E. 121 at 75 (alterations added).  Mr. Saye went on to explain that "[a] secreter is [when] you release oils from your skin.  But if you're not a secreter, you're not releasing those oils.  Therefore, you're not leaving anything behind."  *Id.* at 75–76 (alterations added).

Mr. Erity has not shown that his substantial rights were affected by Mr. Saye's testimony or that there were serious effects on the fairness of the judicial proceedings.  An expert for the government also testified, in far greater detail, that it was possible for someone to touch an item and not leave a fingerprint, and spoke about factors that might affect whether the fingerprints might be useable for identification.  Because Mr. Saye's testimony was duplicative of properly admitted evidence, any negative inferences were harmless and, therefore, Mr. Saye's testimony regarding "secreter" status did not rise to the level of plain error.  *See Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300, 1314 (11th Cir. 2014).

**IV**

The last argument Mr. Erity makes—one that he presents for the first time on appeal— is that 18 U.S.C. § 922(g) is unconstitutional.  Mr. Erity asserts that § 922(g) is unconstitutional because the subsection dealing with possession of a firearm or ammunition does not limit the use of the statute to "interstate or foreign commerce," and does not define what "commerce" means.  He further argues that this subsection of the statute goes beyond Congress' power under the Commerce Clause because it fails to require that the possession of a firearm by a felon substantially affects interstate commerce, in effect regulating mere possession.  According to Mr. Erity, the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995), requires that the criminalization of possession of a firearm by a felon have a substantial effect on interstate commerce to fall within Congress' Commerce Clause powers.

We review the constitutionality of statutes *de novo*. *See United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir. 2010) (citation omitted).  However, an identical constitutional challenge to 18 U.S.C. § 922(g) has already been rejected by this Court in *United States. v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010), and we are bound by prior panel decisions unless or until they are overruled by the Supreme Court or by this Court sitting *en banc*.  *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (citation and internal quotation omitted).

We have interpreted § 922(g) to indicate "a Congressional intent to assert its full Commerce Clause power." *United States v. Nichols*, 124 F.3d 1265, 1266 (11th Cir. 1997). As such, § 922(g) is not facially unconstitutional simply because it uses the word "commerce" rather than "interstate or foreign commerce." *Id.; see also Wright*, 607 F.3d at 715. We have also concluded that § 922(g) prohibits possession of a firearm that has a minimal nexus to interstate commerce, and that this minimal nexus test does not violate the Supreme Court's ruling in *Lopez. See United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996).

Mr. Erity's arguments are foreclosed by our precedent. No plain error was committed. *See Wright*, 607 F.3d at 715; *Vega-Castillo¸* 540 F.3d at 1236; *Nichols*, 124 F.3d at 1266; *McAllister*, 77 F.3d at 390.

V

For the forgoing reasons, we affirm Mr. Erity's conviction.

**AFFIRMED.**