[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12101
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20253-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY ANTONIO THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 13, 2016)

Before HULL, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Randy Thomas appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and his sentence of life imprisonment.  Thomas claims (1) the district court erred in concluding he was competent to stand trial, (2) the district court did not properly consider his *Batson* challenges, (3) the Government engaged in prosecutorial misconduct, (4) his sentence was erroneously enhanced pursuant to the Armed Career Criminal Act (ACCA), (5) his sentence violates the due process and jury trial guarantees of the Fifth and Sixth Amendments, and (6) his sentence is substantively unreasonable in light of his psychotic illness.[1]

After thorough consideration of the parties' briefs, we conclude the district court committed no reversible error.  Therefore, we affirm.

I

Thomas first argues that the district court erred in concluding he was competent to stand trial.  "We review a district court's finding on a defendant's competency to stand trial for clear error."  *See United States v. Bradley*, 644 F.3d 1213, 1267 (11th Cir. 2011).  "The standard for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as

---

[1] Thomas also argues that 18 U.S.C. § 922(g) is unconstitutional on its face and as applied to him because it regulates interstate non-economic criminal activity without requiring a substantial nexus to interstate commerce.  This argument is foreclosed by, *United States v. McAllister*, 77 F.3d 387, 389 (11th Cir. 1996), and we will not disturb that precedent today.

2

well as factual understanding of the proceedings against him." *Id.* at 1268 (internal quotation marks omitted). "The trial court's finding that the defendant was competent to stand trial is presumed to be correct and may not be overturned if it is fairly supported by the record." *Id.* at 1267 (alteration adopted and internal quotation marks omitted).

Both Thomas's and the Government's experts agree that Thomas demonstrated an ability to cooperate with his attorney and understood the nature and seriousness of the charges against him. Therefore, the only question that remains is whether Thomas had the ability to understand the proceedings against him.

Thomas offers testimony to suggest he did not understand the nature of the proceedings, but other evidence in the record supports a contrary finding. Thomas's expert testified that Thomas believed the proceedings against him were a conspiracy involving, *inter alia*, the Ku Klux Klan. In addition to this testimony however, Thomas's expert admitted that Thomas's score on the Multiphasic Personality Inventory (MMPI-2) could indicate malingering. The Government's expert made a consistent finding about malingering. Moreover, the Government's and Thomas's experts were in general agreeance that Thomas was capable of understanding the charges against him, and that he could assist in his own defense.

3

The magistrate judge—whose competency recommendation the district court adopted—weighed each expert's testimony as to the likelihood that Thomas's mental illness was overstated or fabricated.  The judge found more plausible the Government's expert testimony that Thomas's score on the MMPI-2 indicated malingering, rather than Thomas's expert's opinion that he is seriously mentally ill and incompetent.  Based on this finding, the judge determined that Thomas's apparently distorted statements about the nature of the criminal justice system were exaggerated or fictitious.  That credibility determination was not clearly erroneous, especially given that Thomas's expert witness admitted that one way to interpret Thomas's MMPI-2 score was that Thomas was malingering.

Accordingly, the record fairly supported a determination that Thomas understood the proceedings against him, and the district court did not commit reversible error in finding Thomas competent to stand trial.[2]

---

[2] Thomas also argues that the district court erred in relying on the Government's expert testimony.  He claims the testimony of the Government expert was "professionally inadequate" because the expert did not personally interview him.  Thomas did not object to the professional adequacy of the expert's testimony before the district court, which means we review Thomas's argument for plain error.  *See United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012).  Even assuming the district court erred in allowing the Government expert's testimony, that error was not plain or obvious.  No clear controlling precedent exists precluding an expert from testifying as to a defendant's competency when that expert has not personally interviewed the defendant.  *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (holding that "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it").

4

II

Thomas next argues that the district court did not properly consider his *Batson*[3] challenges to the Government's striking of two African-American prospective jurors.

We review *Batson* challenges de novo, but review the underlying factual findings for clear error. *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008). "A district court's finding as to why a juror is excused is an issue of fact, and as such, it will not be disturbed on appeal unless it is clearly erroneous or appears to have been guided by improper principles of law." *United States v. Allen-Brown*, 243 F.3d 1293, 1297 (11th Cir. 2001) (internal quotation marks omitted). Such a finding is largely a credibility determination, and, therefore, "entitled to great deference." *United States v. Gamory*, 635 F.3d 480, 495 (11th Cir. 2011).

A *Batson* challenge involves a three-step inquiry: (1) whether the party challenging a particular peremptory strike made a prima facie showing that the strike was based on race; (2) whether the other party has offered a race-neutral reason for the strike; and (3) whether the challenging party "carried his burden of proving purposeful discrimination," based on an evaluation of "the credibility of

---

[3] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986) (holding that the "Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race").

the stated justifications." *See United States v. Folk*, 754 F.3d 905, 912–13 (11th Cir. 2014); *United States v. Edouard*, 485 F.3d 1324, 1341–42 (11th Cir. 2007). Where the district court considers the non-discriminatory reasons proffered at step two and overrules the challenging party's objections, the issue of whether the challenging party made out a prima facie case becomes moot. *See Edouard*, 485 F.3d at 1342–43.

Here, the district court heard the Government's non-discriminatory reasons for the two peremptory strikes challenged by Thomas and, after listening to Thomas's counterarguments about the Government's reasons, allowed the Government's peremptory challenges to stand. Thus, the issue of whether Thomas made out a prima facie case is moot. *See id.* In deciding to allow the peremptory challenges to stand, the court simply stated that, while the reasons offered by the prosecution were not good, they were "race neutral" and "that's what peremptories are about." Though the district court did not make a clear finding as to credibility, this court still must review for clear error the district court's decision to allow the peremptory challenges to stand. *See id.* at 1343 (applying the clear error standard even where "the district court improperly condensed the second and third steps of the *Batson* inquiry by summarily overruling [the defendant's] objections and/or failing to consider whether [the defendant] had refuted the race-neutral explanations proffered by the Government").

6

We find no reversible error in the district court's judgment to sustain the peremptory strike against the first juror. The prosecutor reasoned the first juror was struck due to concern the juror possibly resented law enforcement. Specifically, in making a statement about her brother-in-law being found innocent of a charged crime, the juror indicated resentment that her brother-in-law was charged with a crime at all. The record reflects the district court effectively made a credibility determination that the prosecutor struck the juror based on this race-neutral reason. Accordingly, the district court did not clearly err in allowing the prosecutor's peremptory challenge to stand.

The district court's decision to sustain the peremptory strike against the second juror was also not clearly erroneous. The prosecutor asserted the second juror was struck because of concern regarding the juror working in the hospital emergency room where individuals injured in the case were taken. Thomas responded that this reason was mere pretext because other jurors with healthcare backgrounds were on the jury. However, and as noted by the Government, none of those jurors worked in an emergency room where Thomas and an officer he allegedly shot were treated. The district judge found the prosecutor's reasoning for striking the second juror race-neutral and allowable. As the Government's reasons were not implausible, there is insufficient evidence to suggest that the race-neutral

7

reasons given by the Government were pretextual.  *See United States v. Maxime*, No. 10-15345, slip op. at 5 (11th Cir. 2012).

Therefore, the district court did not reversibly err in rejecting Thomas's *Batson* challenges.

## III

Thomas also asserts that the Government engaged in prosecutorial misconduct by making several improper statements during its rebuttal closing at trial.  Specifically, Thomas claims the Government improperly accused him of concocting a wild story, misdirecting the jury, wasting the jury's time, shifting the burden of proof, and expressing its own opinions as to his guilt or innocence.

In order to show prosecutorial misconduct based on comments made by a prosecutor at trial, the defendant must show that the comments were improper and prejudicially affected his substantial rights.  *See United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different."  *Id.*  "When the record contains sufficient independent evidence of guilt, any" such improper remarks are harmless.  *See id.*

Any improper comments that the Government made during closing statements were harmless.  Though the comments that Thomas points to were problematic—such as suggestions that the defense wasted the jury's time and

8

intentionally misled them—the weight of the evidence supports Thomas's conviction regardless of the comments. *See id.* Thomas's case turned on whether he, as a felon, possessed a firearm. Three police officers and one eye witness testified that they saw Thomas holding the firearm at issue, and that testimony was corroborated by DNA and ballistics evidence. Accordingly, Thomas cannot show that the Government's comments prejudicially affected his substantial rights.

IV

Fourth, Thomas claims the district court erroneously enhanced his sentence under the ACCA. Thomas argues that, in light of *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), he does not have three ACCA-qualifying prior convictions and therefore was not eligible for an ACCA-enhanced sentence. *See* 18 U.S.C. § 924(e)(1). However, Thomas has two prior Florida convictions for resisting an officer with violence and a 1996 Florida conviction for aggravated assault with a deadly weapon, all three of which qualify as ACCA predicates post-*Johnson*. *See United States v. Hill*, 799 F.3d 1318, 1322 (11th Cir. 2015) (per curiam); *In re Hires*, No. 16-12744, slip op. at 4 (11th Cir. June 15, 2016) (per curiam). Thomas's three qualifying convictions are violent felonies per the ACCA's elements clause, which means *Johnson* does not affect Thomas's ACCA eligibility. *See Johnson,* 576 U.S. at ___, 135 S. Ct. at 2563 (holding the ACCA's

residual clause to be unconstitutional).  Thus, the district court did not err in sentencing Thomas as an armed career criminal.

V

Thomas next contends that his sentence violates the due process and jury trial guarantees of the Fifth and Sixth Amendments because the district court based his sentence on an offense—attempted murder—for which he was never charged and against which he was precluded from defending himself in front of the jury.  In calculating Thomas's United States Sentencing Guidelines (the Guidelines) advisory range, the district court relied on § 2A2.1(a), which provides the base offense levels for attempted murder.  *See* U.S.S.G. § 2A2.1(a).  Thomas claims that the district court erred in relying on § 2A2.1(a) because he was convicted of being a felon in possession of a firearm, not attempted murder.

The invited error doctrine applies to this claim and prevents us from reaching its merits.  *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) ("[A] party may not challenge as error a ruling or other trial proceeding invited by that party.").  Thomas stated in his objections to his presentence investigation report that "his base [offense] level should be 27 instead of 33," and he cited to § 2A2.1(a) for support.  The court characterized this objection as Thomas's request that the court apply the base offense level for attempted second-degree murder rather than first-degree murder.  Thomas did not

10

object to this characterization and the court granted his request, applying a base offense level of 27 pursuant to § 2A2.1(a).  Given that Thomas specifically requested a base offense level under § 2A2.1(a), he cannot now attack the district court's decision to apply that section as being erroneous.  *See Love*, 449 F.3d at 1157.  As such, the doctrine of invited error precludes us from reviewing Thomas's challenge.

## VI

Thomas also argues that his life sentence is substantively unreasonable in light of his "well-documented psychotic illness."  He contends that his mental illness was a significant mitigating factor that the district court improperly discounted.

The substantive reasonableness of a sentence is reviewed under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  The § 3553(a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense; and the need to deter criminal conduct and protect the public.  *See* 18 U.S.C. § 3553(a).  The weight accorded to any § 3553(a) factor is committed to

the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors. *United States v. Dougherty*, 754 F.3d 1353, 1361 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1186 (2015). We will not vacate a sentence unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).

The district court did not abuse its discretion in sentencing Thomas to life imprisonment. The court considered Thomas's significant criminal history, the conduct underlying his conviction—which included not only his possession of a firearm but also shooting that firearm at multiple police officers—and his future dangerousness to society. The court also acknowledged that, pertaining to the § 3553(a)(1) requirement that the characteristics of the defendant be considered, Thomas may have some psychiatric issues. However, based on observations of Thomas's conduct during trial, as well as expert testimony on Thomas's mental health, the court determined Thomas did not suffer from a debilitating mental illness. After weighing these various considerations, the court concluded that a life sentence was appropriate. The district court had the discretion to weigh the § 3553(a) factors, and given the specific circumstances of this case, the court's

12

conclusion does not leave us with a "definite and firm conviction" that its decision was erroneous.  *Cf. Battle v. United States*, 419 F.3d 1292, 1300 (11th Cir. 2005) (per curiam) (holding that the defendant "failed to hurdle the high standard required to prevail on a substantive competency claim" where, among other considerations, "the trial judge observed and interacted with [the defendant] throughout the trial and found [the defendant's] responses to the court and his decisions to be rational").  Therefore, we affirm.

**AFFIRMED.**

13