**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10224

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

STEVE TELUSME,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cr-80076-AMC-1

————————————

Before JORDAN, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Steve Telusme appeals his conviction for possessing a firearm and ammunition in and affecting interstate and foreign commerce as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1),

924(e), and possessing cocaine and fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  He argues that 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied because his criminal history does not indicate that he possessed a firearm in connection to his previous offenses or that he poses a physical danger to anyone.  He also maintains that § 922(g)(1) violates the Commerce Clause facially and as applied to him.

As to his first argument, he contends that our decision in *United States v. Dubois* (*Dubois II*), 139 F.4th 887 (11th Cir. 2025), *cert. denied*, No. 25-6281, 2026 WL 135685 (U.S. Jan. 20, 2026), reaffirming that, under *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), § 922(g)(1) does not violate the Second Amendment, is inconsistent with our earlier ruling in *NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc), that as-applied challenges to firearm regulations must be analyzed under the framework announced in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024).  Thus, he argues that, under our prior panel precedent rule, *Bondi* controls and his constitutional challenge to § 922(g)(1) must be considered under that framework. He also contends that *Dubois II* is inconsistent with our decision in *Florida Commissioner of Agriculture v. Attorney General*, 148 F.4th 1307 (11th Cir. 2025).

In response, the government moves for summary affirmance, arguing that Telusme's Second Amendment arguments are foreclosed by *Dubois II* and *Rozier* and that his Commerce Clause challenges are similarly foreclosed by binding precedent.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where . . . the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).

We review challenges to the constitutionality of a statute de novo. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1043 (11th Cir. 2022).

Under our prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "To overrule or abrogate a prior panel's decision, the subsequent Supreme Court or en banc decision must be clearly on point and must actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (quotation marks omitted). Abrogation requires the subsequent decision to "demolish and eviscerate all the fundamental props of the prior-panel precedent." *United States v. Lightsey*, 120 F.4th 851, 860 (11th Cir. 2024) (quotation marks omitted).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.

Const. amend. II.  Section 922(g)(1) prohibits any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year from "possess[ing] in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms, subject to certain limitations.  554 U.S. 570, 595 (2008). The Court held that the District of Columbia's ban on handgun possession in the home, without any exception for self-defense, was unconstitutional as applied to a police officer who sought to keep a handgun in his home for self-defense.  *Id.* at 574, 628–30. The Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."  *Id.* at 626.  The Court described such prohibitions as "presumptively lawful."  *Id.* at 627 n.26.

Following *Heller*, we ruled in *Rozier* that statutory restrictions on the possession of firearms by felons under any and all circumstances, such as 18 U.S.C. § 922(g)(1), do not offend the Second Amendment.  598 F.3d at 771.  In reaching this conclusion, we referenced *Heller*'s statement that "nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."  *Id.* (quotation marks omitted).

In *Bruen*, the Supreme Court rejected the "means-end scrutiny" test that several circuits had been using to apply *Heller*.  597

U.S. at 17–19. The Supreme Court clarified the proper test for Second Amendment challenges under *Heller*: (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and (2) "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24; *see id.* at 17. In doing so, the Court repeatedly referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70.

Later, in *Rahimi*, the Supreme Court held that 18 U.S.C. § 922(g)(8)—which prohibits the possession of firearms by individuals subject to a domestic-violence restraining order—did not facially violate the Second Amendment because regulations prohibiting individuals who pose a credible threat of harm to others from misusing firearms are part of this country's historical tradition. 602 U.S. at 693–700. The Court noted that lower courts had misunderstood the *Bruen* methodology and clarified that the Second Amendment allows firearm regulations "consistent with the principles that underpin our regulatory tradition" and are "relevantly similar to laws that our tradition is understood to permit." *Id.* at 691–92 (quotation marks omitted). The Court rejected the government's argument that a defendant may be disarmed simply because he or she is not "responsible." *Id.* at 701–02. But it again noted *Heller*'s language that prohibitions on felons' possession of firearms are "presumptively lawful." *Id.* at 699 (quotation marks omitted).

After *Bruen* but before *Rahimi*, we held in *Dubois I* that *Bruen* did not abrogate *Rozier*'s holding that § 922(g)(1) was constitutional because the Supreme Court in *Bruen* made it clear that its holding was a faithful application of *Heller*, which, in turn, clarified "that [its] holding did not cast doubt on felon-in-possession prohibitions." *United States v. Dubois* (*Dubois I*), 94 F.4th 1284, 1292–93 (11th Cir. 2024) (alteration in original) (quotation marks omitted), *vacated*, 145 S. Ct. 1041 (2025), *reinstated*, 139 F.4th 887 (11th Cir. 2025) (*Dubois II*).  The Supreme Court subsequently vacated *Dubois I* and remanded for reconsideration in light of *Rahimi*.  *Dubois v. United States*, 145 S. Ct. 1041, 1042 (2025).

While *Dubois* was on remand, we issued an en banc decision in *Bondi*, ruling that Florida's law prohibiting the purchase of firearms by minors was not unconstitutional as applied to individuals between the ages of 18 and 21 because it was consistent with this nation's historical tradition of firearm regulation.  133 F.4th at 1111, 1117–30.  In doing so, we cited *Rahimi* and *Bruen* in explaining that "when a person challenges a law regulating arms-bearing conduct, courts must examine the historical tradition of firearm regulation in our nation to delineate the contours of the right."  *Id.* at 1114 (quotation marks omitted).  In our analysis, we noted a disagreement as to whether those under the age of 21 were part of "the people" protected by the Second Amendment, stating that some had "argue[d] that . . . 'the people' protected by the Second Amendment are the same as 'the people' protected by the First and Fourth Amendments."  *Id.* at 1130.  But for the purposes of our analysis, we "assume[d], but [did] not decide, that individuals under the age

of 21 are part of 'the people' protected by the Second Amendment." *Id.*

Then, in *Dubois II*, we again held that § 922(g)(1) did not violate the Second Amendment and reinstated *Dubois I.* *Dubois II*, 139 F.4th at 888–89, 894. In so holding, we determined that neither *Bruen* nor *Rahimi* abrogated *Rozier*, relying on our reasoning in *Dubois I* and noting that the Supreme Court in *Bruen* and *Rahimi* made clear that those decisions were in keeping with *Heller*. *Id*. at 891–94. We pointed out that *Bruen* did not concern § 922(g)(1) and that the only reference to felons in *Rahimi* was the Supreme Court's reiteration that prohibitions on the possession of firearms by felons are "presumptively lawful," which suggested that "*Rahimi* reinforced—not undermined—*Rozier*." *Id*. at 893.

Later, in *Florida Commissioner*, we found that a district court erred in concluding that two medical marijuana users had failed to state a claim in their as-applied Second Amendment challenge to 18 U.S.C. § 922(d)(3) and (g)(3), which prohibit "unlawful users" of controlled substances from being sold or possessing firearms. *See* 148 F.4th at 1311, 1321. At *Bruen*'s first step, we concluded that the plaintiffs' "conduct of attempting to purchase and possess firearms for self-defense purposes is clearly covered by the Second Amendment's plain text" and that, "while there is a history and tradition . . . of disarming convicted felons, nothing in the [complaint] indicates that [the plaintiffs] have ever been convicted of any crime" or had committed any crime beyond a misdemeanor. *Id*. at 1317. At *Bruen*'s second step, we found that the government "ha[d] not

pointed to any historical tradition of disarming those engaged in misdemeanant conduct," that the plaintiffs had never been convicted of a felony, and that the plaintiffs could not be considered dangerous people solely due to their use of medical marijuana. *Id.* at 1318–19. Significantly, we noted that the government "very well may prove at a later stage of litigation . . . that Appellants can fairly be considered relevantly similar to felons . . . who can categorically be disarmed." *Id.* at 1321 n. 16.

Here, the government is clearly right as a matter of law that Telusme's Second Amendment challenge to § 922(g)(1) fails. *See Groendyke*, 406 F.2d at 1162. Telusme's argument that § 922(g)(1) is unconstitutional as applied to felons like himself is squarely foreclosed by *Rozier*'s holding that felons are categorically disqualified from exercising their Second Amendment rights, which this Court reaffirmed in *Dubois II*. *See Rozier*, 598 F.3d at 771; *Dubois II*, F.4th at 892–93. In doing so, this Court considered and rejected the proposition that *Bruen* and *Rahimi* abrogated *Rozier*. *See Dubois II*, F.4th at 892–93. Under the prior panel precedent rule, this Court is bound to follow these holdings. *See Archer*, 531 F.3d at 1352. As such, Telusme's discussion of this nation's history and traditions, as well as his arguments regarding his criminal history, are immaterial.

Telusme's attempt to evade these precedents based on a purported conflict between *Bondi* and *Florida Commissioner* on the one hand, and *Rozier* and *Dubois II* on the other, is unavailing. *Bondi* did not involve a challenge to a felon disarmament statute or ever

25-10224                Opinion of the Court                9

suggest that *Rozier*'s analysis of § 922(g)(1) was inconsistent with *Bruen* and *Rahimi*. *See generally Bondi*, 133 F.4th 1108. While *Bondi* flagged a disagreement as to whether "the people" protected under the Second Amendment was the same as "the people" protected under the First and Fourth Amendments, it did not make any determination of who counted among "the people" for the purposes of its Second Amendment analysis, much less indicate that felons had a presumptive right to possess firearms. *See* 133 F.4th at 1130. Nor does *Florida Commissioner* support the purported conflict, as it expressly referenced felons as a class of people who can be categorically disarmed. *See* 148 F.4th at 1321, n.16. Thus, *Bondi* and *Florida Commissioner* have not abrogated *Rozier* because they are not "clearly on point," do not "directly conflict" with *Rozier*, and do not "demolish and eviscerate [its] fundamental props." *See Gillis*, 938 F.3d at 1198 (quotation marks omitted); *Lightsey*, 120 F.4th at 860 (quotation marks omitted).

The Commerce Clause provides that "Congress shall have power . . . [t]o regulate commerce with foreign nations, and among the several states." U.S. Const. art. I, § 8, cl. 3. In *United States v. McAllister*, we rejected a challenge that Congress exceeded its Commerce Clause authority under § 922(g)(1) by regulating the mere possession of a gun, holding that § 922(g)(1)'s jurisdictional element—i.e., that a felon must "possess *in or affecting commerce*, any firearm or ammunition," 18 U.S.C. § 922(g)(1) (emphasis added)—defeated the appellant's facial challenge to the statute. 77 F.3d 387, 388–90 (11th Cir. 1996). We further found that the appellant's as-applied challenge failed because the government had

demonstrated a minimal nexus to interstate commerce by showing that the firearm previously had travelled in interstate commerce. *Id.* at 390. We have repeatedly reaffirmed this holding. *See, e.g.*, *United States v. Scott*, 263 F.3d 1270, 1272–74 (11th Cir. 2001); *United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010); *see also United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

As Telusme concedes, his facial and as-applied challenges to § 922(g)(1) under the Commerce Clause are barred by binding precedent. *McAllister*, 77 F.3d at 388–90; *Scott*, 263 F.3d at 1272–74; *Wright*, 607 F.3d at 715–16. As this Court has held, § 922(g)(1)'s requirement that a felon possess "in or affecting commerce, any firearm or ammunition" forecloses any facial challenge to § 922(g)(1) under the Commerce Clause. *See McAllister*, 77 F.3d at 389–90. Telusme's as-applied challenge is similarly foreclosed because the factual proffer accompanying his plea agreement established that the firearm and ammunition at issue in Count One previously had travelled in foreign or interstate commerce. *McAllister*, 77 F.3d at 390.

Accordingly, because the government's position is clearly right as a matter of law, we **GRANT** its motion for summary affirmance. *See Groendyke*, 406 F.2d at 1162.