[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11966

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

XAVIER SIMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:20-cr-00055-JA-PRL-1

_____

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Xavier Sims appeals his conviction for possession by a convicted felon of a firearm or ammunition in or affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1). Sims argues that the district court abused its discretion by allowing the government to introduce evidence of a shooting that occurred minutes before and in close proximity to his gun possession. Sims contends the district court violated Federal Rules of Evidence 401, 403, and 404(b). Sims further contends that his conviction under § 922(g) plainly violates the Commerce Clause. After review, we affirm.

## I.    BACKGROUND

Because Sims claims the district court erred in certain evidentiary rulings, we review the history of the case and the relevant trial testimony.

On the evening of February 2, 2020, Tamara McDonald was at home with her three children and a man she had recently begun dating. Sims is McDonald's ex-boyfriend and the three children's father. Sims arrived at McDonald's home to pick up their eldest child for an overnight visit at Sims's house.

Soon after Sims drove away with their child, McDonald received a phone call from Sims during which he asked who was at her house. McDonald refused to answer. Soon after that call

ended, McDonald called Sims back, and Sims told her, "Tamara, either that dude gonna come outside or I'm going to shoot your house up." McDonald hung up the phone. But, worried about her child who was with Sims, McDonald called Sims back. Sims stated that after he dropped their eldest child off, he was coming back to her home. Sims also repeated his earlier threat.

After that third phone call ended, McDonald put her other two children in the car and drove to Sims's house to get her eldest child. When McDonald arrived at Sims's house, Sims was not there. McDonald honked her car's horn, and the eldest child ran out to her car.

Now with all three children in her car, McDonald drove to a gas station and called 911 around 9:00 p.m. Sims pulled up next to her at the gas station in a silver Dodge Neon, which belonged to Sims's new girlfriend. McDonald drove away, and Sims followed her for a while. When Sims eventually stopped following her, McDonald pulled over on the side of the road to wait for a responding officer.

When Marion County Sheriff's Deputy Devin Burgoyne arrived, McDonald called Sims and put the phone on speaker so that Deputy Burgoyne could hear their conversation. McDonald asked Sims about threatening to shoot up her home. Sims did not deny that he made such threats.

After speaking with Deputy Burgoyne and showing him where Sims lived, McDonald drove home. She and her three children went to sleep.

Around 1:00 a.m., McDonald heard gunshots and bullets hitting her home. She immediately called 911 and told the 911 operator she thought Sims was shooting at her house, although she did not look outside to see what was going on or who shot at her home. A be-on-the-lookout alert was issued for the Dodge Neon that Sims was driving.

Thirteen minutes after McDonald heard gunshots and called 911, Marion County Sheriff's Corporal Colton Sullivan spotted a Dodge Neon headed away from McDonald's home. Corporal Sullivan stopped the vehicle at a gas station. Then, Corporal Sullivan drew his gun, ordered Sims to get out of the vehicle with his hands up, searched Sims for weapons, and waited for backup officers to arrive. After backup arrived, the officers searched the vehicle. They found a .40-caliber Glock handgun, two magazine clips, and ten spent casings in the trunk. The officers arrested Sims.

Sims was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Sims pleaded not guilty.

Sims filed a motion in limine to exclude evidence of the shooting at McDonald's home under Federal Rules of Evidence 401, 403, and 404(b). Sims argued that the fact a shooting happened at McDonald's home did not make his possession of a firearm more

or less probable, and there was scant evidence to link the two events. Alternatively, Sims contended that the evidence would cause unfair prejudice, confuse the issues, mislead the jury, waste time, needlessly present cumulative evidence, or cause undue delay. Lastly, Sims argued that the evidence was of a prior bad act that could cause the jury to convict him because they were outraged that he shot at McDonald's home.

The government responded that, because the gun was found in the trunk of the vehicle Sims was driving, circumstantial evidence was needed to prove that he constructively possessed the firearm. The government argued that the evidence of the shooting was admissible because (1) it was a relevant part of the "chain of events" that concluded with Sims's arrest; (2) it was not extrinsic evidence under Rule 404(b) and was not being offered to prove that Sims is a bad person; (3) it would tend to prove that Sims had motive to possess the firearm, had the opportunity and intent to do so, planned to do so, and that it was no mistake or accident that Sims was found in the vehicle with the gun; and (4) thus the probative value of the evidence was extremely high and not outweighed by any of the Rule 403 concerns.

The district court held a hearing to address Sims's motion in limine. After hearing argument from both parties, the district court found that the evidence of the shooting and events leading up to it were relevant and not outweighed by the danger of unfair prejudice. The district court, however, advised counsel to proceed with caution in order to avoid a Rule 403 or Rule 404(b) issue. The

district court later issued an order denying Sims's motion in limine for the reasons stated in open court.

During Sims's trial, the government called Special Agent Justin Mace of the Bureau of Alcohol, Tobacco, and Firearms to testify. Special Agent Mace testified that the firearm found in the trunk of the vehicle Sims was driving was manufactured in Austria and imported into Georgia. He further testified that the ammunition was manufactured in Illinois.

After both parties rested and presented their closing arguments, the district court issued a limiting instruction to the jury. The court instructed the jury not to consider any prior acts evidence to decide whether Sims engaged in the activity alleged in the indictment, and rather, to consider it only for the limited purpose of determining whether Sims had the state of mind, intent, motive, or opportunity to commit the acts charged in the indictment.

The jury convicted Sims. The district court sentenced him to 115 months' imprisonment followed by 3 years of supervised release.

## II.    ADMISSIBILITY OF THE SHOOTING EVIDENCE

On appeal, Sims argues that the evidence of the shooting should have been excluded (1) as irrelevant under Rule 401, (2) as a prior bad act offered to show his propensity to commit the crime

21-11966               Opinion of the Court                    7

charged under Rule 404(b), or (3) as unduly prejudicial under Rule 403.[1]

After careful review of the record, we explain why the evidence was relevant under Rule 401, was not extrinsic under Rule 404(b), and has significant probative value and was not unduly prejudicial under Rule 403.

## A.     Rule 401

Sims argues the evidence of the shooting is irrelevant because McDonald did not see the shooter during the incident at her house. We disagree.

The Federal Rules of Evidence define relevant evidence as evidence that "has any tendency to make a fact more or less probable," provided that "the fact is of consequence in determining the action." Fed. R. Evid. 401. Generally, relevant evidence is admissible unless otherwise specified. Fed. R. Evid. 402.

The offense set forth in § 922(g) "entails three distinct elements: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce." *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003); 18 U.S.C. § 922(g)(1). The Supreme Court has held that "in a prosecution under 18 U.S.C.

---

[1] We review the admission of evidence under Rules 401, 403, and 404(b) for abuse of discretion. *United States v. Culver*, 598 F.3d 740, 747 (11th Cir. 2010); *United States v. Matthews*, 431 F.3d 1296, 1308 (11th Cir. 2005).

§ 922(g) and § 924(a)(2), the [g]overnment must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 588 U.S. __, 139 S. Ct. 2191, 2200 (2019).

Here, the evidence of the shooting was highly relevant to show Sims's knowing possession of the gun in the trunk of the vehicle that was not owned or leased by him. Corporal Sullivan spotted Sims driving the silver Dodge Neon only 13 minutes after McDonald heard gunshots and called 911. Therefore, Sims's use of a gun at the shooting "plainly bore on [his] knowledge" that there was a gun in the trunk of the car just minutes after the shooting. *See Jernigan*, 341 F.3d at 1281 (emphasis omitted). By pleading not guilty to the charges, Sims made knowledge and possession of a firearm an issue in the case. *See, e.g.*, *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) (concluding that the district court did not abuse its discretion in admitting evidence of the defendant's prior possession of a firearm because the defendant's not guilty plea in a felon-in-possession case rendered the mens rea element a material issue that the government was required to prove).

Significantly, the police had found the gun in a vehicle that Sims did not own. Thus, the shooting evidence was highly probative of Sims's knowing possession of the firearm in the trunk.

21-11966                Opinion of the Court                9

## B.    Rule 404(b)

Sims argues that the evidence of the shooting is a prior bad act offered to show his propensity to commit the crime charged. He claims that the evidence was not relevant to whether he knowingly possessed the firearm.  He contends that the evidence of the shooting was weak and unsupported by corroboration and that it was not relevant to any issue aside from his character.  We disagree.

Rule 404(b) prohibits the introduction of evidence of a crime, wrong, or other act to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  It does, however, allow such evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Further, such evidence is admissible if it is "(1) [of] an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quotation marks omitted).    "Rule 404(b)    is    a    rule    of    inclusion, and accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case." *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (cleaned up).

Here, the evidence of the shooting was intrinsic. It "was vital to an understanding of the context of the government's case against [Sims] and, therefore, can be said to be 'inextricably intertwined' with the government's proof of the charged offense[]." *See McLean*, 138 F.3d at 1404. In other words, the evidence of the shooting provided necessary context to the charged offense and was properly admitted by the district court.

## C.    Rule 403

Sims argues that the evidence of the shooting was unduly prejudicial and should have been excluded on that basis. Sims contends that the government should have restricted evidence to matters related to possession of the firearm or offered an edited version of the shooting. Sims alleges that the government painted him as a horrible man by describing the shooting at trial. We disagree.

Relevant evidence "may" be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. However, exclusion under Rule 403 is an extraordinary remedy that courts should employ "only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006).

The district court did not abuse its discretion in ruling the probative value outweighed any prejudice.  As explained above, the evidence of the shooting was highly probative.  Importantly, there was no *unfair* prejudice here.  Certainly, the evidence of the shooting was damaging to Sims's defense.  But all relevant evidence is inherently prejudicial.  And Rule 403 does not permit a court to exclude the government's evidence simply because it may hurt the defendant.  *See United States v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990) ("Simply because the evidence is damaging or prejudicial to a defendant's case does not mean . . . that the evidence should be excluded."). "It is only *unfair* prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Id.* (alteration adopted).  And, to the extent the evidence of the shooting is arguably unfairly prejudicial, it still does not substantially outweigh its probative value.

## III.    COMMERCE CLAUSE

For the first time on appeal, Sims argues that § 922(g) is unconstitutional under the Commerce Clause and, as a result, his conviction and sentence are invalid.[2]  This argument is foreclosed

---

[2] Generally, we review the constitutionality of a statute *de novo*, as it is a question of law. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). However, if the issue is raised for the first time on appeal, we review for plain error only. *Id.* Plain error occurs only if (1) there was error, (2) it was plain, (3) it affected the defendant's substantial rights, and (4) it seriously affected the

by our precedent. As Sims acknowledges, this Court has "clearly held that § 922(g) is constitutional under the Commerce Clause." *United States v. Longoria*, 874 F.3d 1278, 1283 (11th Cir. 2017) (citing *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996)).

This Court has also rejected as-applied challenges to § 922(g), holding that the government proves a "minimal nexus" to interstate commerce where it demonstrates that the firearms were manufactured outside of the state in which the offense took place and thus, necessarily traveled in interstate commerce. *United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010). We have rejected *Lopez* challenges to § 922(g), concluding that "[n]othing in *Lopez* suggest[ed] that the minimal nexus test should be changed." *McAllister*, 77 F.3d at 390 (quotation marks omitted).

In light of *McAllister* and *Wright*, Sims's constitutionality arguments regarding § 922(g) lack merit and thus do not establish error, much less plain error. Here, the government presented evidence, by way of Special Agent Mace, showing that the firearm and ammunition that Sims possessed had traveled in interstate commerce, and therefore, satisfied the minimal nexus requirement.

**AFFIRMED.**

---

"fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted).